[No. 12742. In Bank. — September 4, 1889.]

JOSE MARIA DE NECOCHEA, Appellant, v. MINERVA CURTIS, Respondent.

Water Rights — Appropriation by Ditch — Non-compliance with Code — Riparian Rights of Subsequent Pre-emptioner — Act of 1866. — Under the act of Congress of July 16, 1866, a prior appropriator of a water right, who diverts the water from its natural channel by means of a completed ditch prior to the vesting of any rights in a subsequent pre-emptioner of the land over which the water would naturally flow, is protected to the extent and in the manner of such actual and completed diversion, against any riparian rights of the subsequent pre-emptioner, notwithstanding the failure or neglect of the prior appropriator to comply with the Civil Code as to the posting and record of a notice of appropriation of the water right.

Id. — Construction of Civil Code — Notice of Appropriation of Water Right — Relation — Effect of Diversion — Subsequent Appropriation. — The object of the legislature in prescribing in section 1415 of the Civil Code that a notice of appropriation of a water right is to be posted and record thereof to be made, and in section 1416 that work is to be commenced for diversion of the water within sixty days after the posting of the notice, and to be diligently prosecuted thereafter, etc., is merely, as declared in section 1418, to enable the claimant to avail himself of the doctrine of relation as against an intervening appropriator. After the diversion of the water has been completed, and the same has been applied to a beneficial use, the appropriator has a perfect right to the water appropriated, against all the world except the owner of the soil, and those claiming adversely who have complied with the law. Whether a subsequent appropriator could at any time after the completion of the diversion by the prior appropriator take the water away from the latter by complying strictly with the code is not decided.

Appeal from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion of the court and in the opinion of Chief Commissioner Belcher.

*Hunsaker, Britt & Lamme,* for Appellant.

*Collier & Haines,* for Respondent.

BEATTY, C. J. — A sufficient statement of this case will be found in our former opinion, filed February 23, 1889.

After filing that opinion, we concluded, on account of the novelty and importance of the question decided, to order a rehearing, and the case, after full and exhaustive reargument, has been again submitted for decision.

In their printed brief, filed upon the rehearing, counsel for appellant have urged several assignments of error in addition to that upon which we held that the judgment of the superior court must be reversed; but since, after the most attentive consideration of the very able and ingenious argument of counsel for respondent, we are still satisfied of the correctness of that decision, and of the validity of the reasons upon which it was based, we do not deem it necessary to consider any other questions affecting the right of appellant to a reversal of the judgment.

We held in our former opinion that De Necochea, having by means of an artificial ditch completed the diversion of the waters of a spring rising on public lands of the United States from their natural channel to lands occupied and owned by him, where they were used for irrigation and other purposes, thereby acquired a right to continue such diversion and use, as against Mrs. Curtis, a subsequent pre-emptioner of the land upon which the spring rises, and this notwithstanding De Necochea's diversion and use of the water was not completed or even commenced prior to the enactment of the Civil Code, and notwithstanding he failed and neglected to post or record the notice prescribed by section 1415 of the said code.

This conclusion counsel for respondent vigorously combat in an argument which we are sure leaves nothing further to be said on their side of the question.

If the time at our disposal permitted, it would not be unprofitable to take up the points of this argument and consider them *seriatim*, and perhaps it is only fair to counsel that we should do so, but as it is, we can only repeat with a little more fullness what we have before said, noticing incidentally some of the more important of the objections to the grounds of our decision.

There is no difference between counsel and the court as to the meaning and effect of the acts of Congress cited in our former opinion. It is conceded on all sides that rights to the use of water on the public lands of the United States for mining, manufacturing, agricultural, and other purposes (and to the ditches and reservoirs used in connection with such water rights), which have vested and accrued, and are recognized by local customs, laws, and decisions of the courts, are confirmed and assured to the owners; and that all purchasers of public lands affected by the diversion of streams from their natural courses for the purposes named take such lands subject, and subject only, to such vested and accrued water rights.

When, therefore, a contest like this arises between a pre-emptioner of public land claiming riparian rights in a spring rising upon or a stream flowing through his land, as against one who asserts a right to divert the spring or stream to other lands for agricultural or other beneficial purposes, the sole question is, whether a right so to divert and use the water had vested and accrued before the right to purchase the land became a vested right.

In this case it is clear from the findings that the respondent's right to purchase did not become a vested right prior to the year 1885, and that as early as the year 1880 the appellant had completed the diversion, and was in full enjoyment of the use of the water of the spring for the irrigation of his land.

But the respondent contends that he was nevertheless

not an appropriator, and had no vested right to the use of the water recognized or acknowledged by the laws of this state, because, having commenced and completed his diversion of the waters of the spring after the enactment of the Civil Code, he failed and neglected to post or record the notice prescribed by section 1415.

As this is the point upon which our decision must turn, we will endeavor to state our views with respect to it somewhat more fully and explicitly than we have hitherto done.

Sections 1415 and 1416 of the Civil Code read as follows: —

"Sec. 1415. A person desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein: —

"1. That he claims the water there flowing to the extent of (giving the number) inches, measured under a four-inch pressure;

"2. The purposes for which he claims it, and the place of intended use;

"3. The means by which he intends to divert it, and the size of the flume, ditch, pipe, or aqueduct in which he intends to divert it.

"A copy of the notice must, within ten days after it is posted, be recorded in the office of the recorder of the county in which it is posted.

"Sec. 1416. Within sixty days after the notice is posted, the claimant must commence the excavation or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by snow or rain."

It may be conceded that if these provisions of the law stood alone and unqualified, strict, or at least substantial, compliance with their requirements would be as counsel claim, a *sine qua non* to the acquisition of any right to divert running water from its natural channel.

But these provisions do not stand alone. Section 1418 reads as follows:—

"SEC. 1418. By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted."

In this provision we begin to see the purpose and object of the legislature, which, in our opinion, was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation upon which it had always been held before the statute, that one who gave sufficient notice of his intention to appropriate, and followed up his notice by diligent prosecution of the work, was, upon its completion, to be deemed an appropriator from the date of his notice, and was, therefore, prior in time and stronger in right than an intervening appropriator, notwithstanding his diversion of the water might be first completed. We are not, however, left to any doubtful implication to be drawn from section 1418.

Section 1419 reads as follows:—

"SEC. 1419. A failure to comply with such rules deprives the claimants of the right to the use of the water as against a subsequent claimant who complies therewith."

This language clearly and necessarily implies that there is a right to the use of running water acknowleged by the legislature and cognizable by the courts, which is good against all the world except a claimant who has complied with the rules prescribed in sections 1415 and 1416.

Now, what is this right? What can it be except the right of one who has fully completed the diversion of running water and applied it to a beneficial use before the initiation of an adverse right of appropriation under the law, or the acquisition of an adverse right in the land to be affected by the diversion? And why should not such a right be recognized and enforced?

The case supposed is that of a man who has gone upon the public unoccupied lands of the United States, diverted water from its natural course, conveyed it through ditches and flumes to a distant point, and used it for irrigation, mining, or manufacturing purposes. Is the pre-emptioner who sees him in actual possession of his dams and ditches diverting the water and using it when he first sets foot upon the land in any wise injured by the circumstance that such actual diversion was not preceded by the posting and recording of a notice of intention, followed by work commenced within sixty days, and diligently prosecuted? We cannot perceive that he is. If he wishes to locate and purchase the land, he can see precisely what the nature and extent of the servitude is to which it has been subjected, far more precisely at least than he could have known from a mere notice of intention such as the code prescribes.

But irrespective of any considerations of convenience, the sole question is, Has the appropriator in the case supposed a right to the water which our laws recognize and enforce? If he has, he is within the terms, and entitled to the benefit of the Congressional legislation above referred to. And there can be no doubt that since the code, as before, he has a perfect right, deducible from common-law principles, to the water actually appropriated, as against all the world except the owner of the soil and those claiming adversely who have complied with the law. In the absence of such adverse claim his right is perfect, for the owner of the soil—the United States —has recognized and confirmed it, and has declared that all subsequent purchasers must take subject to it.

Counsel for respondent seem to understand the last sentence of our former opinion as holding or intimating that while she as a riparian owner can claim no advantage from the failure of appellant to post and record a notice of his intended appropriation, another appropriator could at any time, by compliance with the provis-

ions of the code, take the water which he has diverted and is using. We must not be understood as holding or intimating any such opinion. The case presents no such question for decision, even incidentally, and we express no opinion about it. Since, therefore, we have not made this supposed peculiar and invidious discrimination against purchasers of public land, we need not stop to defend it. If there is any such discrimination, which we do not admit, it is made by the terms of the statute, and not by any construction put upon it by us.

· We concede the force, the conclusiveness even, of the argument that if the pre-emptioner cannot, in view of section 1419 of the Civil Code, take advantage of the failure of an appropriator to post a notice, he cannot, for the same reason, take advantage of his failure to commence and prosecute the work of diversion with diligence, as provided in section 1416. But of what consequence is this? We decide nothing, except that a diversion of water, without compliance with the statute, gives a right to continue the diversion against a pre-emptioner whose right of purchase vests after the diversion is fully completed, and then only to the extent and in the manner of such actual and completed diversion. We do not hold that an incompleted diversion without compliance with the statute gives any right to complete or continue the diversion as against an intervening right of pre-emption.

The question under discussion was not involved in the case of *Lux* v. *Haggin*, 69 Cal. 255, and of course was not there decided. There are expressions in the opinion which seem to imply that an appropriation can only be made by strictly pursuing the rules prescribed by the code, but it is evident they were not used for the purpose of establishing the proposition, and nothing which was decided depends on such a proposition for its support. The same may be said of *Osgood* v. *Water and Mining Co.*, 56 Cal. 571.

For these reasons, and those assigned in our former

opinion, we think the judgment of the superior court should be reversed, and as both parties agree that a new trial is not required, it is ordered that the judgment appealed from be reversed, and the cause remanded, with directions to the superior court to enter a judgment for the plaintiff in accordance with the views herein expressed.

Paterson, J., Thornton, J., McFarland, J., and Sharpstein, J., concurred.

The following is the opinion above referred to, rendered in bank on the 23d of February, 1889:—

Belcher, C. C. — This action was brought to restrain the defendant from diverting the water flowing to and upon the plaintiff's land. The court below gave judgment for the defendant, and the plaintiff appealed.

The facts, as found by the court, are, in substance, as follows: The plaintiff is the owner of a tract of land in San Diego County containing 160 acres, and extending across his land is a cañon or ravine in which a natural stream of water flows at all times when not prevented by artificial means. This stream has its source in a large spring issuing from the earth about half a mile distant from plaintiff's land. Some time about the year 1880, plaintiff, in order to prevent the waste and loss of water consequent upon its flow in its natural channel down the cañon, constructed a ditch from the spring to his land, and diverted the water of the spring into his ditch, and thereby conducted it to and upon his land. From that time until the defendant diverted the water from his ditch, plaintiff used it for domestic purposes and the watering of stock, and at seasons of the year when irrigation of crops was necessary and proper, for irrigating his land. On a part of his land he has fruit-trees and vines growing, which will suffer injury, and the productiveness and value of the land will be reduced, if he is deprived of the use of this water.

The tract of land containing eighty acres on which the spring in question is located was public land in 1885. During that year defendant settled upon this tract, and has since acquired title to it under the preemption laws of the United States. Shortly after her settlement, and in the same year, defendant constructed a ditch, and therein diverted the waters of the spring upon her tract of land, to be there used for the purposes of irrigation. Plaintiff objected to this appropriation by defendant, and by his agents entered upon defendant's land and restored the flow of water from the spring to his own ditch. From that time a controversy as to the right to the use of the water was kept up between the parties till the summer of 1887, when defendant turned the same upon her own land and entirely diverted it from the plaintiff's land. Defendant has a number of fruit-trees, vegetables, etc., upon her tract of land, which have been grown by means of irrigation with the waters of the spring, and such trees and other crops will suffer injury if defendant is deprived of the use thereof.

The question arising from these facts is, Did the defendant when she obtained the title to her land thereby acquire a right to the exclusive use of the water of the spring, unaffected by the prior appropriation thereof by plaintiff?

From the time of the organization of the government of this state it has been customary for persons to go upon the public lands and to construct ditches and appropriate waters flowing thereon for mining, manufacturing, agricultural, and other useful purposes, and the right to the water so appropriated, as against any subsequent appropriator not having rights derived from the government, has been recognized and upheld by the courts. (*Irwin* v. *Phillips*, 5 Cal. 140; 63 Am. Dec. 113; *Hill* v. *King*, 8 Cal. 336; *Ortman* v. *Dixon*, 13 Cal. 33; *Lobdell* v. *Simpson*, 2 Nev. 274; 90 Am. Dec. 537; *Barnes* v. *Sabron*, 10 Nev. 217.) And in order to make a valid

appropriation before the adoption of the code, no notice of the claim was required to be posted or recorded. It was sufficient that the water was actually appropriated and used for the intended purpose before any one else intervened and claimed a right to it.

On the 16th of July, 1866, an act was passed by Congress, the ninth section of which provided "that whenever by priority of possession rights to the use of water for mining, agricultural, manufacturing, or other useful purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same, and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed." (14 U. S. Stats. at Large, 253.)

On the 9th of July, 1870, the act of July 16, 1866, was amended, and it was, among other things, provided that " all patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the ninth section of the act of which this act is amendatory." (16 U. S. Stats. at Large, 218.)

In *Jennison* v. *Kirk*, 98 U. S. 456, the court, speaking by Mr. Justice Field of the section above quoted, said: "The object of the section was to give the sanction of the United States, the proprietor of the lands, to possessory rights which had previously rested solely upon the local customs, laws, and decisions of the courts, and to prevent such rights from being lost on a sale of the lands."

In *Broder* v. *Water Co.*, 101 U. S. 276, the court, speaking by Mr. Justice Miller of the same section, said: "It is the established doctrine of this court that rights of

miners who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation, in the region where such artificial use of the water was an absolute necessity, are rights which the government had by its conduct recognized and encouraged and was bound to protect before the passage of the act of 1866. We are of opinion that the section of the act which we have quoted was rather a voluntary *recognition of a pre-existing right of possession* constituting a valid claim to its continued use than the establishment of a new one." And in that case it was held that rights acquired by appropriation before the passage of the act were protected as against one who obtained title to the land from the government after its passage.

It has also been held that where rights to water were acquired by appropriation after the passage of the act of 1866, they were valid, and must be protected as against one who subsequently obtained title to the land from the government. (*Osgood* v. *Water and Mining Co.*, 56 Cal. 571; *Farley* v. *Spring Valley M. & L. Co.*, 58 Cal. 142; *Himes* v. *Johnson*, 61 Cal. 259; *Judkins* v. *Elliott*, Sup. Ct. Cal., August 30, 1886; *Ware* v. *Walker*, 70 Cal. 591.)

It is, however, contended for respondent that plaintiff never acquired any valid right to the water flowing from the spring, because he never posted or recorded a notice of his attempted appropriation, as required by section 1415 of the Civil Code.

We do not think this contention can be sustained. It is not alleged in the pleadings or found by the court that either of the parties ever complied with the provisions of the section referred to, and in the absence of such an allegation and finding, we may assume that they did not. But the only effects resulting from a compliance and from a failure to comply with the provisions of the code are declared in sections 1418 and 1419, as follows:—

"Sec. 1418. By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted.

"Sec. 1419. A failure to comply with such rules deprives the claimants of the right to the use of the water as against a subsequent claimant who complies therewith."

It must be held, therefore, that notwithstanding the plaintiff failed to post and record the requisite notice, he still acquired a right to the use of the water when he actually diverted it to his land and applied it to useful purposes. And this right was good, and must be sustained as against the defendant and all the world until a superior right is shown. But no superior right was shown by the defendant, or could be, without a compliance on her part with the provisions of the code.

It results that the judgment should be reversed, and the cause remanded for a new trial.

Foote, C., and Hayne, C., concurred.

The Court.— For the reasons given in the foregoing opinion, the judgment is reversed, and cause remanded for a new trial.

McFarland, J., concurring.—I concur in the judgment, because defendant in her answer claims the water in contest only as an appropriator. As to what the law would be between one claiming as a riparian owner against a mere appropriator who had not complied with the code, I express no opinion.