CHARLES MURRAY, APPELLANT, AND LOUIS MURRAY, RESPONDENT, *v.* C. TINGLEY, ET AL., APPELLANTS.

[Submitted Oct. 15, 1887.    Decided Oct. 25, 1897.]

*Water Rights—Notice of Location—Appropriation—Prior Right—Pleading, Amendment of—New Cause of Action.*

1. WATER RIGHTS—*Notice of Appropriation*—A notice of location of a water right is fatally defective unless it is verified in conformity with Section 1255 Compiled Statutes 1887 (Section 1886, Civil Code 1895).
2. SAME—*Appropriation*—A valid water right may be acquired, even where there has been no compliance with the statute, where water is actually diverted from the stream and is applied to a beneficial use.
3. PRIOR APPROPRIATIONS—One who complies with the statutes regulating the appropriations of water acquires a right which relates back to the date of the posting of his notice of location.
4. SAME—Of two claimants of water, neither of whom had complied with the statute, he who first completes his ditch and puts it to a beneficial use, has the prior right, although he began to build his ditch after the ditch of the other claimant had been commenced.
5. PLEADING—*Amendment—New Cause of Action*—In an action brought to determine the right of the parties to the waters of a creek, the complaint alleged an appropriation of water by plaintiff's grantors; the notice of appropriation of this right having been excluded by the court, because the same was not properly verified,

plaintiff, upon leave of court, amended his complaint so as to allege an appropria-
tion which he had ma .e of the same stream, *Held*, that the amended complaint did
not substitute one cause of action for another.

*Appeal from District Court, Choteau County. Dudley
Du Bose, Judge.*

ACTION by Charles Murray and Louis Murray against C.
Tingley and others. From the judgment, defendants and
plaintiff Charles Murray appeal. Reversed and remanded.

Statement of the case by the justice delivering the opinion.

This was an action arising from a conflict in claims to the
waters of Big Sandy creek, in Choteau county, Montana.

It appears that about May 2, 1888, one Martin commenced
a ditch to divert water from said creek for the purpose of ir-
rigating his squatter's claim of 160 acres, some two miles
distant. In an attempt to comply with Chapter 74, Compiled
Statutes 1887, about May 2d he posted a notice of location at
his point of diversion, and about the same time recorded a
notice of appropriation. This recorded notice was not sworn
to, and, in lieu of the affidavit required by the statute, con-
tained simply an acknowledgment. In July he had extended
his ditch to a point some 300 yards from the point of diver-
sion. He had also plowed a furrow from the point where the
ditch was incomplete to his land. This was all the work Mar-
tin ever did on the ditch. On or about November 19, 1888,
he sold and conveyed his ranch and water right to one Mc-
Donald, who did not work on the ditch during the time he was
its owner. About July 28, 1889, McDonald sold the ranch
and water right to Charles Murray. Charles Murray and his
brother, Louis Murray, commenced work on the ditch where
Martin had left off, in the fall of 1889 and completed it to
within a quarter of a mile of the Martin ranch. It was not
finished, however, until about the 26th day of April, 1890,
at which time water was for the first time conducted on the
land. The Murrays used the water through this ditch in
1890, 1891, and 1892, and irrigated certain lands, including

the Martin tract.   In 1893,  1894, and  1895  the defendants interfered with their use of  a portion of the waters claimed by them.

On June 7, 1891, Louis Murray posted a notice of location at the point of diversion of the Martin ditch, and filed for record a notice of appropriation, duly sworn to.   By these proceedings he attempted to make an appropriation *de novo* of the ditch originally commenced by Martin, and completed by his brother and himself.

It was conceded below, for the purposes of the trial, that the defendants had commenced their ditch about May 20, 1888, for the purpose of irrigating certain unsurveyed agricultural lands held by them about $2\frac{1}{2}$ miles distant from their point of diversion.   They had their ditch completed so as to convey water upon their lands in the spring of 1889.   It appears that defendants had prepared and recorded on or about May 26, 1888, two notices of appropriation of the waters of Big Sandy creek.   These notices were not sworn to as required by the statute, and were acknowledged, simply, just as was the notice which Martin had recorded.

The case was tried to the court without a jury.   During the progress of the trial, plaintiffs, the Murray brothers, offered in evidence the notice of location which Martin had recorded. Upon objection the court excluded this notice, the main ground of objection to it being that it was not sworn to.   Thereupon the plaintiffs asked leave to amend their complaint so as to set forth that Louis Murray had on June 1, 1891, in compliance with the statute, made an appropriation of the waters diverted by the ditch originally commenced by Martin.   This amendment was allowed, over the objection of the defendants; the main ground of such objection being that the amendment changed the original cause of action.   Defendants did not avail themselves of the court's offer to allow them time to plead to the new allegations in the amended complaint, but answered and proceeded with the trial.   The notice of appropriation recorded by Louis Murray was admitted in evidence over the objection of defendants.   After the plaintiffs had

rested, the defendants offered in evidence their recorded notices of appropriation, but the court refused to admit them.

The trial resulted in a decree awarding the plaintiff Louis Murray 130 inches of the waters of the creek; the date of his appropriation being determined as of June 1, 1891. The decree denied any relief to the plaintiff Charles Murray and the defendants, on the ground that they had not shown any right to the use of any of the waters of Big Sandy creek. There are two appeals—one by the defendants, and the other by the plaintiff Charles Murray—from the judgment and an order denying motions for a new trial.

*Walsh & Newman, Toole & Wallace, Leslie & Downing* and *J. J. Donnelley*, for Appellants.

Before the act of 1885 the actual diversion and use of water gave a preferential right and priority, which was a property right and the subject of sale and transfer. (*Salazer* v. *Smart*, 12 Montana 395; *Ft. Morgan Co.* v. *So. Platte Co.*, 18 Col. 1; *Stickler* v. *Col. Springs*, 16 Col. 61; *L. Co. R. R. Co.* v. *People*, 8 Col. 614.) And this right upon the completion of the ditch with reasonable diligence related back for its date of priority to the time of the first commencement of work, so as to cut off all intervening rights. (*Osgood* v. *Eldorado Co.*, 56 Cal. 564-571; *Lieber* v. *Frink*, 7 Col. 148; *Woolman* v. *Garringer*, 1 Montana 535; *Ophir Co.* v. *Carpenter*, 4 Nev. 534.) And the courts of California have uniformly and repeatedly held that since the enactment of the statute a water-right may still be acquired by actual diversion and user, without a posting or a record of the notice provided for in the act, and that the only consequence of such failure to post or record is the loss of the right of relation, thus making a water-right acquired by diversion and use alone date from the completion instead of the commencement of the work. (*De Necochea* v. *Curtis*, 20 Pac 563; 22 Pac. 198, 199, 200; 80 Cal. 397; *Burrows* v. *Burrows*, 23 Pac. 146; 82 Cal. 564; *Wells* v. *Mantes*, 34 Pac. 324, 325; 99 Cal. 583;

*Watterson* v. *Saldunbehere*, 35 Pac. 432, 433; 101 Cal. 107; 28 Am. and Eng. Encly. Law, p. 995.)

*H. G. McIntire*, Attorney for Respondent, Louis Murray, and for Appellant, Charles Murray.

This is but a concise statement of the law concerning water rights from the beginning. An appropriator as we have seen is one who asserts an intention to appropriate and carries out such intent with reasonable diligence and by open and physical acts to its consummation. The facts attending the Charles Murray appropriation fit this definition to a nicety. "If a notice of the intention to appropriate was properly given and the work of constructing the dam, ditch, reservoir or other necessary instrumentalities of the diversion was begun within a reasonable time and was prosecuted with due and reasonable diligence until their completion, then the exclusive right thus acquired by the perfected appropriation will relate back at least to the time of commencing the work, even if not to the time of giving the notice. * * * This doctrine of relation is practically important in determining the priority of the appropriation as against subsequent appropriators and claimants of water from the same stream." (Black's Pomeroy, Section 55; *Nevada Ditch Co.* v. *Bennett*, 45 Pac. 472.) "And this right upon the completion of the ditch with reasonable diligence related back for its date of priority to the time of the first commencement of work, so as to cut off all intervening rights. (*Osgood* v. *Eldorado Ditch Co.*, 56 Cal. 564, 571; *Lieber* v. *Frink*, 7 Col. 148; *Woolman* v. *Garringer*, 1 Montana 535; *Ophir Co.* v. *Carpenter*, 4 Nev. 534.)" If this doctrine is abrogated by the statute then in order to get the benefit of the new law a compliance with the statute must be shown. But this defendants do not pretend to be able to do. There can be no serious contention that the California cases cited by defendants on page 12 of their brief hold that under such facts as indicate the Charles Murray appropriation and that of defendants, respectively, the latter is the better of the two. On the contrary the following is there said : "In this

provision (referring to Section 1418) we begin to see the purpose and object of the legislature which, in our opinion, was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation upon which it had always been held before the statute that one who gave sufficient notice of his intention to appropriate, and followed up his notice by diligent prosecution of the work, was, upon its completion, to be deemed an appropriator from the date of his notice, and was therefore, prior in time and stronger in right than an intervening appropriator, notwithstanding his diversion of the water might be first completed." (*DeNecochea* v. *Curtis*, 22 Pac. 199, and *Wells* v. *Mantes*, 34 Pac. 325.)

BUCK, J.—The District Court properly excluded the notices of location offered in evidence by plaintiffs and defendants. The absence of affidavits was a fatal defect.

The decree is based on the theory that a water right cannot be acquired save by compliance with the statute regulating the appropriation of water. We think the trial judge took an erroneous view of the law. The statutes of this state in reference to the acquisition of water rights are substantially the same as those of California.

Section 1257, Fifth Division, Compiled Statutes 1887 (Section 1888, Civil Code 1895,) is as follows: "A failure to comply with the provisions of this chapter deprives the appropriator of the right to the use of the water as against a subsequent claimant who complies therewith, but by complying with the provisions of this act, the right to the use of the water shall relate back to the date of posting the notice."

This section is substantially the same as Sections 1418 and 1419 of the Civil Code of California. In the Montana section, however, the word "appropriator" is used in lieu of the word "claimant" in the California sections aforesaid. It is insisted that for this reason the Montana statute should be construed in a different manner from that of California. By a reference to the other sections of the Montana act, however,

—Sections 1255, 1256, Fifth Division, Compiled Statutes 1887 (Sections 1886, 1887, Civil Code 1895,)—in which the word "appropriator" occurs in the sense of "claimant," it is manifest that the said word, as used in said Section 1257 (1888), is not susceptible of any greater or narrower force than the word "claimant." Hence the two words may be regarded as convertible, and as expressing the same meaning. Therefore no distinction can be drawn between the California water right act and that of Montana.

In California it is held that a valid water right may be acquired even when there has been no compliance with the statute, where water has been actually diverted from a stream by means of a ditch, and applied to a beneficial use, in the absence of the inception of any adverse statutory claim. ( *Wells* v. *Mantes,* 99 Cal. 583, 34 Pac. 324.)

In tue case of *De Necochea* v. *Curtis,* 80 Cal. 397, on pages 400, 401, 20 Pac. 563, and 22 Pac. 198, to the same effect, the court expresses its view of the law as follows :

"Sections 1415 and 1416 of the Civil Code read as follows :

" 'Section 1415. A person desiring to appropriate water must post a notice in writing, in a conspicuous place at the point of intended diversion, stating therein : (1) That he claims the water there flowing to the extent of (giving the number) inches, measured under a four-inch pressure; (2) the purposes for which he claims it, and the place of intended use; (3) the means by which he intends to divert it, and the size of the flume, ditch, pipe or aqueduct in which he intends to divert it. A copy of the notice must, within ten days after it is posted, be recorded in the office of the recorder of the county in which it is posted.'

" 'Section 1416. Within sixty days after the notice is posted the claimant must commence the excavation or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by snow or rain.'

"It may be conceded that, if these provisions of the law

stood alone and unqualified, strict, or at least substantial compliance with their requirements would be, as counsel claims, a *sine qua non* to the acquisition of any right to divert running water from its natural channel. But these provisions do not stand alone.

"Section 1418 reads as follows : 'By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted.'

"'In this provision we begin to see the purpose and object of the legislature, which, in our opinion, was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation, upon which it had always been held, before the statute, that one who gave sufficient notice of his intention to appropriate, and followed up his notice by diligent prosecution of the work, was, upon its completion, to be deemed an appropriator from the date of his notice, and was therefore prior in time and stronger in right than an intervening appropriator, notwithstanding his diversion of the water might be first completed. We are not, however, left to any doubtful implication to be drawn from Section 1418. Section 1419 reads as follows : 'A failure to comply with such rules deprives the claimant of the right to the use of the water as against a subsequent claimant who complies therewith.' This language clearly and necessarily implies that there is a right to the use of running water, acknowledged by the legislature and cognizable by the courts, which is good against all the world except a claimant who has complied with the rules prescribed in Sections 1415 and 1416. Now, what is this right? What can it be, except the right of one who has fully completed the diversion of running water, and applied it to a beneficial use, before the initiation of an adverse right of appropriation under the law, or the acquisition of an adverse right in the land to be affected by the diversion? And why should not such a right be recognized and enforced?"

We think the construction of the statute by the Supreme Court of California is logical and correct, and are of the

opinion that the Montana act should be construed in the same manner. The Montana legislature, in the enactment of said water-right act, intended to regulate the doctrine of "relation back." Prior to its passage, on March 12, 1895, no notice of location or record of appropriation was required. A person acquired a right to the use of water by digging a ditch, tapping a stream, and turning water into it, and applying the water so diverted to a beneficial use. This constituted a valid appropriation of water.

For years before the statute was enacted the rule of law was "that the appropriation of water by persons who prosecute the work on their ditch with reasonable diligence dates back to the commencement of the work." ( *Woolman* v. *Garringer*, 1 Montana 535.)

Therefore, as between two persons digging ditches at the same time, and prosecuting work thereon, with reasonable diligence, to completion, the one who first began work had the prior right, even though the other had completed his first. This was the doctrine of "relation back."

Questions of priority, however, as well as of the original capacity, etc., of ditches, depended chiefly on oral testimony, —on the memory of eyewitnesses, often at fault through lapse of time. Confusion and insecurity to vested rights resulted. To obviate this as much as possible, the statute was enacted. It required a notice of location to be posted at the point of diversion, to apprise others who contemplated the acquisition of water rights from the same stream that the locator had taken his initial step to appropriate water. It required a recorded notice of appropriation, in order that a record might be supplied, giving the history in detail of each appropriation, which would inure to the benefit of their successors in interest, as well as to the appropriator's, and not leave them dependent upon the mere memory of witnesses when conflicts should arise. In enacting this law the legislature did not contemplate that one who failed to comply with the terms of the statute, but who, in the absence of any conflicting adverse right, had nevertheless actually diverted

water and put it to a beneficial use, should acquire no title thereby. The essence of an appropriation—a completed ditch, actually diverting water, and putting it to a beneficial use—remained the same as it had been before. The object of the statute was to preserve evidence of rights, and also to regulate the doctrine of relation back. It follows that the statute controls this doctrine of relation back, and that one who seeks to avail himself of it since the passage of this act can only do so by a compliance with the statutory requirements.

Again, we are satisfied that the legislature did not intend that one who failed to comply with the statute, but who had nevertheless actually diverted water, could be deprived of it by another who complies with the statute at a time subsequent to the former's completed diversion. (See *Wells* v. *Mantes*, 99 Cal. 583, 34 Pac. 324 and *Watterson* v. *Saldunbehere*, 101 Cal. 107, 35 Pac. 432.)

Neither appellant Charles Murray nor the defendant appellants complied with the statute, but, as between Charles Murray and the defendant appellants, the right of defendant appellants is a superior one. The latter had their ditch completed, and water flowing over their land, a year before the former did. Defendant appellants and Charles Murray both acquired valid water rights, despite a noncompliance with the statute; but the right of defendants is superior to that of Charles Murray, although he commenced work on his ditch first.

As to Charles Murray and defendant appellants, Louis Murray acquired no superior right by virtue of his appropriation in 1891.

One other alleged error defendants appellants submit for our consideration, namely, that the trial court, in allowing the amendment it did, permitted one cause of action to be substituted for another.

In the view we have taken of the law applicable to this controversy, whether error was committed or not in this respect is not very material; but we do not think, under the statute

regulating the appropriation of water, which expressly provides, in Section 1260, that the court may in one decree settle the relative rights of any and all persons who are parties to the litigation, the objection would be well taken if Louis Murray's 1891 appropriation could have availed him (which, however, as has been shown, it could not). It would not have been the substitution of one action for another, so far as Louis Murray was concerned, in such an event.

It was stipulated in the lower court that ''the facts conceded to be true in reference to the history of the defendants' appropriation of water were admitted only for the purposes of the particular trial, and without prejudice to the right of either side to contradict or vary the facts so conceded if a further trial should be had.''

In view of this stipulation and the error committed, the order of this court is that the judgment be reversed and the cause remanded, with directions to the lower court to grant a new trial and proceed in pursuance with the views herein expressed.

*Reversed and Remanded.*

PEMBERTON, C. J., and HUNT, J., concur.