(No. 2496.)

FARMERS DEV. CO. v. RAYADO L. & I. Co.

### SYLLABUS BY THE COURT

(1) The right of one who claims the right to the use of water for irrigation purposes under the Appropriation

Act of 1907 (Laws 1907, c. 49), does not relate back to an earlier date than the filing of his application,. as required by said act.                                                      P. 363

(2) Section 19 of chapter 102 of the Session Laws of 1905 was a police regulation only; and complaince therewith did not initiate a right to the use of water.           P. 363

(3) The general law for the appropriation of water as recognized in the arid states, was not affected by the enactment of chapters 102 and 104 of the Session Laws of 1905.
                                                         P. 363

(4) The enactment of chapters 102 and 104 of the Session Laws of 1905 repealed sections 493 and 494 of the Complied Laws of 1897.                              P. 363

(5) Section 2 of chapter 102 of the Session Laws of 1905, enacted into statute the general law of appropriation of water.                                                     P. 363

(6) Chapter 104 of the Session Laws of 1905 was permissive in character; applying only to such claims to the right of use of water as were initiated under it. It was not exclusive, and did not preclude the initiation of a claim under the general law; nor did it deprive a claimant of the doctrine of relation.                                  P. 363

(7) Chapter 104 of the Session Laws of 1905 provided an alternative procedure for the appropriation of water effective only in securing certain concessions as to time of construction provided therein.                    P. 363

(8) In construing a statute, words retain their ordinary meaning, unless a different meaning is necessary to give effect to the purpose and intent of the Legislature.   P. 365

(9) The power to construe a statute permissive in form as mandatory is exercised in proper cases by the courts; but it is dangerous power and should be exercised with reluctance, but only in cases coming clearly within the recognized rules; or when the clear intent of the statute, as shown by the context, demands such construction.              P. 365

(10) No right was obtained by following an unauthorized rule of the territorial engineer, attempting to create a right of relation.                                       P. 368

(11) Sections 2 and 59 of chapter 49 of the Session Laws of 1907 excluded from its operation claims of appropriation of water initiated under the general law prior to its enactment, and rights so obtained related back to the initiation of the claim, subject to the diligent prosecution to completion of necessary surveys and construction for the application of the water to a benefical use.                      P. 369

(12) Evidence held sufficient to establish the fact that appellee had initiated a claim to the right to use water to irrigate 10,000 acres of land, and that appellant had notice thereof prior to its initiation of a claim.          P. 370

(13)   Where there is substantial evidence to support the findings of the trial court, they will not be disturbed on appeal.                                            P. 370

(14)   Maps made by the territorial engineer, to be used in another case by authority of a statute, are admissable in evidence in connection with the testimony of the witnesscs who did the engineering work and made the maps, as other maps are admitted in evidence.                       P. 371

(15)   Where the uncontradicted evidence shows an appropriation of water for domestic purposes, and the court, on request, refused to allow the same or make findings in regard thereto, the case will be remanded, with instructions to determine the question and reform the decree accordingly.                                               P. 371

Appeal from District Court, Colfax County; Leib, Judge.

Suit by the Farmers' Development Company against the Rayado Land & Irrigation Company and others. From a decree for plaintiff, defendants appeal. Affirmed in part, reversed in part, and remanded with instructions.

Crampton, Phillips & Darden, of Raton, and A. T. Rogers, Jr., of East Las Vagas, for appellants.

Lindsey & Larwill, of Denver, Colo., and Bickley & Kiker, of Raton, for appellee.

STATEMENT OF FACTS

The facts here stated have reference only to the conflicting claims to the use of water between the appellee and the appellant Rayado Colonization Company, hereinafter called appellant. The facts concerning the other parties to the suit will be sufficiently stated in the opinion.

The appellant corporation was organized in November, 1906, and some preliminary work was done toward its enterprise between the 5th and 15th of October. Definite surveys were made the first part of November of that year, from which maps were prepared outlining the project. In December or January, other surveys were made and ditches outlined on the ground. In May, 1907, still other surveys were made, maps prepared and sent to the county recorder of Colfax county to be filed, but were rejected because of the passage of

the Irrigation Act of that year. On May 27, 1907, the appellant filed with the irrigation engineer its application for appropriation of water under the Irrigation Act, approved March 19, 1907 (chapter 49). This application was not approved until the determination of a suit ultimately decided by the Supreme Court in 1912, requiring the issuance of a permit; but specifically providing in the decree that it was subject to all prior rights to the use of water. Afterwards it commenced the construction of its irrigation system and continued with apparent reasonable diligence until the filing of this action. Appellant had spent some $60,000, to the time this suit was filed, in constructing its irrigation system, had about 1,300 acres of land under irrigation, and a number of settlers with substantial homes were living thereon. The delay from 1907 to 1912 cannot be charged to it, as its operation under the act of 1907 required the permit which the territorial engineer had refused to issue.

In September, 1906, Morris N. Mikesell, acting for himself and associates, who subsequently organized the appellee corporation, secured an option to purchase certain lands in Colfax county, New Mexico, and after an inspection of the lands following the arrival of his associates, a contract to purchase said lands was, on October 5, 1906, entered into between Mikesell and his associates on the one hand, and the owners of the land on the other, the object of the purchase being to colonize said lands after securing water for their irrigation. On October 5, 1906, Mikesell wrote a letter to the territorial irrigation engineer of New Mexico in the following words:

"In accordance with section 19 of chapter 102 of the laws of New Mexico, 1905, you are hereby notified we desire to appropriate for irrigation purposes, all the regular and flood waters of the Rayado river and tributaries thereto, unappropriated. Said water will be stored in reservoirs located in township 15 north, ranges 19 and 20 east, Colfax county, and will be more definitely located hereinafter. The land to be irrigated consists of about 10,000 acres, situated in townships 24 and 25 north, ranges 20 and 21 east, Colfax county, New Mexico. Work will be begun by survey immediately. Dated October 5, 1906."

This letter was received and filed by said engineer on October 7, 1906, and treated as an application for the appropriation of water. Survey work for reservoir No. 1 and outlet of ditches was begun on October 8, 1906; maps were prepared and forwarded to the territorial engineer the latter part of 1906, to be filed as required by section 19 of chapter 102 of the Session Laws of 1905. In January, 1907, a surveying party was put in the field to obtain data for amending maps theretofore filed, which maps were made and filed with the territorial irrigation engineer January 14, 1907. In the latter part of March, 1907, a second surveying party was put in the field, surveying and locating a second reservoir and canals, and later additional maps were filed with the territorial irrigation engineer. The appellee was incorporated in April, 1907, and the lands mentioned conveyed to it in May of that year. These are the principal properties owned by appellee, although other land was later purchased. On May 14, 1907, the territorial engineer, Vernon L. Sullivan, wrote Mikesell as follows:

"Inclosed you will find copies of rules and regulations relative to parties who have filed notice of intended appropriation but have not otherwise complied with the law and finished their appropriations. This allows you to make application for your intended use of water under the new law, but allows you date of priority same as date of first notice of intended appropriation filed with the territorial irrigation engineer. You can complete your appropriation in your name or the name of the Farmers' Development Company; however, the former would be less complicated. I will send you, as soon as same is printed, blank form of application to appropriate public water together with instructions for obtaining same."

The rule adopted by the territorial engineer, mentioned in the letter just quoted, is as follows:

"Those who have filed notice of intended appropriation with the territorial irrigation engineer as per section 9, chapter 102, Laws of 1905, but have not filed maps, plans and specifications and who have not otherwise complied with the law, may now file an application under the provisions of the new law of 1907 and said application will be treated as having been received upon the date of the filing

of the notice of intended appropriation with the territorial irrigation engineer, and also treated otherwise the same as an original application under the law of 1907."

The territorial irrigation engineer apparently treated chapter 102 of the Laws of 1905 as an act providing for the appropriation of water.

On June 10, 1907, after the receipt of this letter, the appellee filed its application as suggested by the territorial engineer, reciting therein that it was to be "in connection with the notice filed with the territorial irrigation engineer October 5, 1906." After the filing of this application, the appellee made numerous other applications for the construction of reservoirs, canals, etc., unnecessary to specifically mention further.

The first dirt was moved in constructing appellee's irrigation system in August, 1907, and work thereafter was continued with apparent diligence until the date of filing this suit, at which time $300,000 had been expended on the enterprise, about 6,700 acres had been placed under irrigation, colonized, and many substantial homes built thereon by purchasers of land with water rights.

Both appellee and the territorial and state engineers have treated the filings made prior to the passage of the Irrigation Act of 1907 as having been legally filed and given effect thereto as though the priorities of the appellee had been determined by the filing of the letter of October 5, 1906, and had existed since said date.

OPINION OF THE COURT·

BRICE, District Judge (after stating the facts as above). The acts of appellant prior to its application on May 27, 1907, were ineffective because, first, appellee's work of the same character was prior in time; and, second, appellant's claim is based upon its application of May 27, 1907. Its priorities, if any, are of that date. The letters, maps, etc., filed by appellee with the territorial irrigation engineer prior to the enactment of chapter 49 of the Laws of 1907, were not effective

in initiating a claim for the appropriation of water. Section 19 of chapter 102 of the Laws of 1905 has reference solely to the building of dams or dikes that might endanger life or property, and gave to the territorial irrigation engineer a supervision thereover amounting to police regulation.

[1-7] Appellant and appellee agree (in which we concur) that the enactment of chapters 102 and 104 of the Laws of 1905, repealed by implication sections 493 and 494 of the Compiled Laws of 1897. Section 2 of chapter 102 and chapter 104 are permissive statutes, and were substituted for the mandatory one they repealed. Its wording and the elimination of the penalties provide by the old law indicate its permissive character. Such acts have never been held to preclude the right to appropriate waters under the general law, as recognized in the arid states of the West; and such right is only limited by the provisions of the statute. The right of appropriation under the general law (enacted into statute law by section 2 of chapter 102 of the Laws of 1905) was available to any one desiring to appropriate water by that method, subject only to such limitations as the statutes expressly or impliedly provide. Chapter 104 provided an alternative procedure which, if followed would give to the person filing such notice with the probate clerk:

"the exclusive use of all unappropriated water sought to be diverted and appropriated or so much thereof as was useful or necessary for the accomplishment of all purposes set out in such notice of appropriation." Section 3.

Also, on the filing of the notice provided for the party proposing to construct such system was given thereby six months in which to begin and 18 months in which to complete such diversion and appropriation; and even a longer time, upon application to the district court, if, by unavoidable circumstances, delays occurred.

That the manner of appropriation provided for by such statutes is not exclusive has been decided by many

courts. Crane Falls, etc., Co. v. Snake River Irrigation Co., 24 Idaho, 63, 133 Pac. 655; Fruitland Irr. Co. v. Kruemling, 62 Colo. 160, 162 Pac. 161; Haight v. Costanich, 184 Cal. 426, 194 Pac. 26; Wells v. Mantes et al., 99 Cal. 583, 34 Pac. 324; Town of Antioch v. Williams Irrigation District (Cal. Sup.) 205 Pac 688; Morris v. Bean et al., (C. C.) 146 Fed. 423; De Necochea v. Curtis, 80 Cal. 507, 20 Pac. 563, 22 Pac. 198; Murray et al. v. Tingley et al., 20 Mont. 260, 50 Pac. 723; 2 Kinney on Irrigation and Water Right, § 730. While the cases just cited hold that complete appropriation must be effected by one who does not give the statutory notice to acquire a right to the use of the water, this is because the statutes so provide, and in that respect differed from the New Mexico statute of 1905.

That portion of section 493 of the Compiled Laws of 1897, in force prior to the enactment of chapters 102 and 104 of the Session Laws of 1905, necessary to an understanding of the legal proposition involved, is as follows:

"That any person, association or corporation hereafter constructing or enlarging any ditch, canal or feeder for any reservoir, and taking water from any natural stream, shall within ninety days after the commencement of such construction, change or enlargement, file and cause to be recorded in the office of the probate clerk of the county in which such ditch, canal or feeder be situated, a sworn statement in writing, showing," etc., "and no priority of right for any purpose shall attach to any such construction, change or enlargement until such record is made."

This statute, of course, is clearly mandatory and, like the statutes of the several states whose decisions are cited, only affected the doctrine of relation as recognized by the general law. In lieu thereof, the Legislature enacted, in 1905, section 2 of chapter 102 and chapter 104 of the Session Laws of that year, covering the same subject. We quote from said chapter 104 as follows:

"Section 1. Any person, company or association which may desire to divert and appropriate unappropriated water flowing through any natural channel or stream for agricul-

tural, mining,. milling, mechanical or other useful purposes, may file in the office of the probate clerk in the county wherein it is sought to make such appropriation or diversion, a written statement or notice thereof, which statement on notice shall contain the following. * * *

"Sec. 2. On the filing of the notice hereinbefore provided for, the party proposing to construct such diversion shall have six months in which to begin, and eighteen months in which to complete such diversion and appropriation: Provided, however, that if by unavoidable circumstances such party is delayed, then in that event on the making a proper showing, it shall be the duty of the district judge of such district to allow such party a reasonable time within which to commence and complete such appropriation.

"Sec. 3. From and after the filing of the notice herein provided. for, the party so making and filing such notice, shall have and possess the exclusive use of all unappropriated waters sought to be diverted and appropriated or so much thereof as may be useful or necesasry for the accomplishment of all purposes set out in such notice of appropriation; * * * and, provided, further, that this act shall · not have any retroactive operation and shall not apply to dams, ditches, acequias, or any other appropriations that have heretofore been made; the whole purpose of this act being to provide for and encourage the useful appropriation of waters now running to waste, and unappropriated."

[8] The former statute provided that such notice, shall be filed; also, that no priority right for any purpose should attach to any such construction, change or enlargement until such record was made. The later act provided that such person may file notice, etc., and provided no penalty for a failure to file the notice. The intention of the Legislature in enacting the law will control. The literal language of the statute, of course, is permissive (Medbury v. Swan, 46 N. Y. 202), and in construing a statute, words retain their ordinary meaning, unless a different construction is necessary to give effect to the purpose and intention of the Legislature (Black on Interpretation of Laws, 530); so that this statute must be construed to be a permissive statute, unless there appears from the context or otherwise some clear purpose or intention of the Legislature that would require a different construction.

[9] There is nothing in the context from which it could be fairly inferred that the Legislature intended the statute to be mandatory. The power to construe

such statues as mandatory is established ·by authority, and should be applied in proper cases; but it is dangerous power and leads to abuse, and should be exercised with reluctance and only in cases coming clearly within the recognized rules, or when the clear intent of the statute, as shown by the context, **demands** the application of such rule. Black on Interpretation of Laws, 533; Santa Cruz Co. v. Heaton, 38 Pac. 693; State ex rel. Jackson v. School District No. 1, 80 Kan. 667, 103 Pac. 136; U. S. v. Thoman, 156 U. S. 353, 15 Sup. Ct. 378, 39 L. Ed. 450; Minor et al. v. Bank, 1 Pet. 46, 7 L. Ed. 47; Board of Commissioners v. Davis, 136 Ind. 503, 33 N. E. 141, 22 L. R. A. 515; Dillingham v. Spartanburg, 75 S. C. 549, 56 S. E. 381, 8 L. R. A. (N. S.) 412, 117 Am. St. Rep. 917, 9 Ann. Cas. 829. But aside from this the enactment of section 2 of chapter 102, Laws of 1905, is conclusive of the intention to enact a permissive statute.

Chapters 102 and 104 of the Laws of 1905 were probably passed on the same day, were certainly approved by the Governor on the same day (March 16, 1905), and went into effect upon the same day; and therefore should be construed as parts of the same act. Section 2 of chapter 102 reads as follows:

"Benefical use shall be the basis, the measure, and the llmit of the right to use water. Priority in time of use shall give the better right, and in all cases the claims to the use of water the right shall relate back to the initiation of the claim, upon the diligent prosecution to completion of the necessary preliminaries, and the construction of the works and means of diversion and appropriation; and all dams, ditches, canals, conduits, acequias, reservoirs, and other works heretofore made or constructed, by means of which any waters have been applied to any beneficial use, must be taken to have secured the right to use waters claimed to the extent of the quality, which said works are capable of conducting or utilizing: Provided, Nothing in this act must be so construed as to in any manner interfere with the vested rights of individuals, companies, or corporations or the appropriation of waters, which said individual, association or corporation may be applying to a beneficial use."

This is substantially all there is to it affecting the appropriation of water. It enacts into a statute the

general law of appropriation known as the "Colorado Doctrine," adopted by the Supreme Court of the territory before we had any law on the subject. Now chapter 104 did not require the filing of the notice and one of the provisos (in section 3 of the act) is:

"Provided, that the **provisions of this act** shall apply to cases in which the notice of appropriation herein provided for shall have ben filed."

The language may be inapt, and not sufficiently exclusive when taken alone, but, when considered in connection with section 2 of chapter 102, it apparently means:

"That the provisions of this act shall (only) apply to cases in which the notice of appropriation herein provided for shall have been filed."

At the time appellant and appellee initiated their claim, the general law of appropriation, including the so-called "doctrine of relation," was in effect. The fact that the appellee, the territorial irrigation engineer, and the territorial engineer were mistaken as to the rights of appellee, or as to the manner of procedure under the statutes of 1905, for the appropriation of waters, is not material. Appellee failed to follow the plain intent of the statute. No error of the territorial engineer could excuse the appellee; nor could any rule of his, in the absence of authority therefor, give life to acts not sufficient to initiate a legal right.

There was no intention on the part of the appellee that his application of June 10, 1907, should have effect as of that date or, indeed should be construed as an application to appropriate water under the law of 1907; for both the engineer and the appellee had treated its claim at all times as having been initiated October 5, 1906, and the mere fact that the old documents were a part of the engineer's records, and attention had been called thereto, was not sufficient to make them applications under the new law; so that the appellee's claim that his letters calling the attention of

the territorial engineer to these old filings was in effect a filing prior to appellant's under the act of 1907, cannot be sustained. The appellee did no act that initiated a right under the statutes.

Appellee's right of prior appropriation, if it has such right, resulted from the operation of the general law, and section 2 of chapter 102 of the Session Laws of 1905, based upon work sufficient to initiate a claim prior to May 19, 1907, the date the Irrigation Act of 1907 became effective, which seems to provide an exclusive method for the appropriation of water after that act became effective. A part of section 2, c. 49 (the Irrigation Act), of the Session Laws of 1907, is as follows:

"In all cases of claims to the use of water initiated prior to the passage of this act, the right shall relate back to the initiation of the claim, upon the diligent prosecution to completion of the necessary surveys and construction for the application of the water to a beneficial use. All claims for the use of water initiated after the passage of this act shall relate back to the date of the receipt of an application therefor in the office of the territorial engineer, subject to compliance with the provisions of this act, and the rules and regulations established thereunder."

Section 59 of the Irrigation Act of 1907 is as follows:

"Nothing contained in this act shall be construed to impair existing, vested rights or the rights and priorities of any person, firm, corporation or association, who may have commenced the construction of reservoirs, canals, pipe lines or other works, or who have filed affidavits, applications or notices thereof for the purpose of appropriating for beneficial use, any waters as defined in section 1 of this act, in accordance with the laws of the territory of New Mexico, prior to the passage of this act."

[10] Appellee's rights or priorities, if any, are specifically preserved by both section 2 and section 59 of said act of 1907. If a claim to water was actually initiated by the appellee prior to March 19, 1907, then the right would relate back to the initiation of the claim upon the diligent prosecution to completion of necessary surveys and construction for the applica-

tion of the water to a benificial use; and there is substantial evidence to support the fact that such a claim was initiated by appellee. The evidence justifies the inference that the appellant had knowledge of facts sufficient to charge it with notice of all the acts done by the appellee toward initiating a claim to water to irrigate the 10,000 acres of land; that the facts known were of such character as to put a reasonable person on notice that appellee was beginning the construction of an irrigation enterprise of the magnitude claimed; and this was sufficient notice. 2 Kinney on Irrigation (2d Ed.) § 732.

[11] The mere intention to appropriate water for the irrigation of land, of course, is not sufficient to initiate a right, under the general law. There must be an act which the courts have termed "the first step," as an inception of the right, to be followed with the exercise of diligence in construction and the application of the water to a beneficial use. These conditions precedent, being performed, the right relates back to the time when the first step was taken. Rio Puerco Irr. Co. v. Jastro, 19 N. M. 149, 141 Pac. 874. The "first step" may be work in excavating ditches, necessary surveying, or any substantial act necessary to, and giving notice of, the building of the contemplated system for the irrigation of land. 2 Kinney on Irrigation (2d Ed.) § 747.

As neither of the parties hereto filed the notice required by chapter 104 of the Laws of 1905, neither secured any rights thereunder. Each initiated rights under the general law, the appellee, having initiated its the first, was prosecuting its work with diligence at the time the act of 1907 went into effect. Such right was recognized by, and excluded from, the operation of the act of 1907. Now appellant irrigation company does not claim any right under the general law (and if it did, it would be inferior to appellee's right), but rests its claims solely upon its appropriation under the act of 1907.

[12, 13] We therefore conclude that the district court was correct in holding that the appellee was entitled to a prior appropriation of water for 10,000 acres of land superior to the right of appellant Rayado Land & Irrigation Company, under its appropriation of May 27, 1907, subject to the conditions and provisions of the decree. The appellant Chicago Live Stock Company contends that the trial court awarded the right to use much less water than it and its predecessors in title had legally appropriated. The court allowed water for the irrigation of 475 acres, and placed the duty of water at 1½ second feet per acre per crop season. It would serve no useful purpose to review this evidence, as it is conflicting to a high degree. There is not only substantial evidence to support the findings and decree of the court, but apparently very trustworthy evidence. It has been repeatedly held by this court, in equity cases as well as suits at law, that findings of the trial court supported by substantial evidence will not be disturbed. The contention that a large amount of meadow land had been irrigated by the Chicago Live Stock Company and its predecessors in title was apparently given due consideration by the trial court. We are not able to say that the district court was not correct in its finding.

With reference to the claims of Juan I. Valdez, Elena Valdez, Joseph Clouthier, Juanita Clouthier, J. M. Valdez, H. M. Porter, J. E. Shanan, and Cimarron Valley Land Company, substantially the same condition appears as that affecting the rights of the Chicago Live Stock Company. There was no dispute in the trial court as to priorities, and these were fixed in the decree. The court apparently took into consideration the older methods of diversion, and provided that the water should be measured at the land to be irrigated. The duty of water was fixed at 1½ second feet per irrigation season as to all the land affected by the decree, and the weight of the evidence, we believe, shows that this was substantially correct.

[**14**]   There is some contention that the map made by the territorial engineer and his assistants from the hydrographic survey, ordered in another suit, was not admissible in evidence in this case.   These maps were admissible in connection with the testimony of J. W. Lews, who did the surveying in the field and made the figures from which the calculations were made, and of Vernon L. Sullivan, the then territorial engineer, under whose supervision and in whose office the calculations were made and maps drawn.   They were admissible, as maps and plats are ordinarily admissible in connection with the testimony of witnesses who secured the data for their preparation and made them; and not because they were prepared by the territorial engineer as a statutory hydrographic survey.

[**15**]   There seems to have been no provision made in the decree regarding stock water for the appellants last named, in fact there is nothing in the decree determining this issue.   Undoubtedly the water had been used by these appellants for stock purposes for many years, and there is a possibility of their being deprived of such water, at least at times during the season when reservoirs are being filled.

The district court's decree is affirmed in all particulars, with the exception of the claims to stock water of appellants last named, and is remanded, with instruction to make findings determining this feature of the case and to reform its decree accordingly, and it is so ordered.

PARKER, C. J., concurs.