ORDER ON PETITION FOR REHEARING
In the petitions for rehearing, we are reminded that even though there has been no compliance with the statutes regulating appropriations by record, where water has actually been diverted from streams and applied for beneficial use, a right to the use of that water for beneficial use is established. In discussing the effect of recording statutes in water appropriation matters, this Court said in Murray v. Tingley (1897), 20 Mont. 260, 268, 269, 50 P. 723:
Questions of priority, however, as well as of the original capacity, etc., of ditches, depended chiefly on oral testimony, — on the memory of eyewitnesses, often at fault through lapse of time. Confusion and insecurity to vested rights resulted. To obviate this as much as possible, the statute was enacted. It required a notice of location to be posted at the point of diversion, to apprise others who contemplated the acquisition of water rights from the same stream that the locator had taken his initial step to appropriate water. It required a recorded notice of appropriation, in order that a record might be supplied, giving the history in detail of each appropriation, which would inure to the benefit of their successors in interest, as well as to the appropriator’s, and not leave them dependent upon the mere memory of witnesses when conflicts should arise. In enacting this law the legislature did not contemplate that one who failed to comply with the terms of the statute, but who, in the absence of any conflicting adverse right, had nevertheless ac *437 tually diverted water and put it to a beneficial use, should acquire no title thereby. The essence of an appropriation — a completed ditch, actually diverting water, and putting it to a beneficial use — remained the same as it had been before. The object of the statute was to preserve evidence of rights, and also to regulate the doctrine of relation back. It follows that the statute controls this doctrine of relation back, and that one who seeks to avail himself of it since the passage of this act can only do so by a compliance with the statutory requirements.
“Again, we are satisfied that the legislature did not intend that one who failed to comply with the statute, but who had nevertheless actually diverted water, could be deprived of it by another who complies with the statute at a time subsequent to the former’s completed diversion. (Citing cases.)”
As to Elmer Hanson (Riverside Ranch), and Walter Joyce, although their written and posted notices are deficient, and therefore not admissible in evidence to establish the dates thereby of their beneficial rights in the waters in Sheep Creek, the evidence is uncontroverted that each of these parties did actually divert from Sheep Creek, and use beneficially upon their lands those waters. Their lands are downstream from the other claimants, and their rights would be junior to any of the other claimants, so therefore, there are no adverse interests claiming this same water now being beneficially used by Riverside Ranch and by Joyce. The evidence is further clear that since 1949, the appropriation of waters for these purposes by Hanson (Riverside Ranch) and Joyce has been ongoing. Therefore, even though their evidence of earlier diversion through the recorded notices is not admissible, under the other evidence in this case, they have established a beneficial use of waters from Sheep Creek at least since 1949. In the case of Riverside Ranch, this amounts to 1,050 inches and in the case of Walter Joyce, an additional 200 inches out of Sheep Creek.
Our original opinion therefore, of August 2, 1979 in this case is modified to allow out of Sheep Creek 1,050 inches to Riverside Ranch and an additional 200 miners inches out of Sheep Creek to *438 Walter Joyce, each beginning June 1, 1949 which date is probably the latest first date for the irrigating season for that year. As so modified, our opinion of August 2, 1979 is otherwise confirmed, and the petitions for rehearing are otherwise denied.