No. 81-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

COLLEEN N. BAGNELL,

Plaintiff and Appellant,

vs.

CHARLES J. LEMERY,
DANIEL LEMERY et al.,

Defendants and Respondents.

_____

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Morales, Volinkaty and Harr, Missoula, Montana

For Respondents:

Turnage & McNeil, Polson, Montana

_____

Submitted on briefs: December 11, 1981

Decided: January 27, 1983

Filed: JAN 27 1983

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff/appellant initiated this action seeking to enjoin defendant/respondent from interfering with the water flow in Ashley Creek in Lake County, Montana, and to adjudicate the water rights of the parties. The District Court of the Fourth Judicial District in and for the County of Lake, found defendants to have a senior water right of 178 acre feet per year and a priority date of 1917 and plaintiff to have a junior water right limited to defendants' surplus. Plaintiff appeals.

Defendants are owners of real property situated in Lake County, north of St. Ignatius, Montana, described as the NW¼, Section 31, Township 19 North, Range 19 West, M.P.M. Plaintiff is the owner of real property adjacent to defendants' northwest boundary line described as the NE¼, SE¼, Section 25, Township 19 North, Range 20 West, M.P.M. This case involves water from natural springs located west of defendants' property on land owned by Therin Mahle. The water from the Mahle Springs flows through defendants' land and into Ashley Creek and then Ashley Creek flows from defendants' land onto plaintiff's land.

Defendants' predecessors in interest began using the water from the Mahle Springs in 1917 as domestic water for the family home, water for a "duck pond" used in raising domestic fowl for commercial purposes, stock water for raising cattle, horses and pigs, and for irrigation of their 160 acre tract. Defendant Lemery testified there had been a continuous beneficial use of water on the defendants' land in the amount of 110 gallons per minute or 178 acre feet per year since 1917. In 1956 defendants began construction of an ASC approved dam to impound the spring water. The dam was completed in 1958. The purpose of the dam was to stabilize defendants' water supply and defendants claim no increase in the amount of their water right via the construction of the dam. The water impounded by the dam has been used for flood irrigating approximately 60 acres of defendants' land,

sprinkler irrigating the full 160 acres of defendants' land, stock water for cattle, and a commercial fish operation. On April 3, 1973, defendant Lemery filed a notice of completion of ground water appropriation without well, claiming 110 gallons per minute. Defendant estimated 110 gallons per minute equaled 15 acre feet of water used per year. Plaintiff's predecessor began using water from Ashley Creek in 1957 for stock water. Plaintiff's predecessor testified that at times Ashley Creek would become completely dry and she would approach defendant Lemery and ask him to release water from his dam which he would do. Plaintiff purchased her property in 1974 and on May 17, 1978, plaintiff obtained a water use permit for Ashley Creek from the Montana Department of Natural Resources. The permit states plaintiff's use is subject to all prior appropriations.

In 1978, defendant Lemery refused to release additional water to plaintiff. Plaintiff then initiated this action in the Fourth Judicial District, Lake County, to adjudicate the parties' water rights and to enjoin defendants from interfering with the tributary waters of Ashley Creek. On July 1, 1981, the District Court filed its findings of fact, conclusions of law, judgment and decree nunc pro tunc. The District Court found defendants to have a superior water right of 110 gallons per minute or 15 acre feet per year. The District Court further found plaintiff is only entitled to any surplus water over and above defendants' rights. Plaintiff appealed. On April 1, 1982, this Court remanded the case back to the District Court for further findings. On July 7, 1982, the District Court filed second amended findings of fact, conclusions of law, judgment and decree. The District Court found defendants to have a right to 110 gallons per minute which actually equals 178 acre feet per year with a priority date of 1917 and found plaintiff's rights limited to any available water in Ashley Creek or any surplus water from defendants' dam. Plaintiff appeals.

The issues raised on appeal are as follows:

- 3 -

1. Whether the District Court failed to comply with this Court's remand for further findings.

2. Whether the District Court erred in holding that defendants' water rights are superior and prior in time to plaintiff's.

3. Whether the District Court erred by granting defendant an excessive appropriation of water.

4. Whether the traditional policy considerations of Montana water law justify the finding that defendants have beneficially applied their appropriation.

On April 1, 1982, this Court remanded this case for further findings to determine the amount of the 1917 water right, the extent to which the water right was changed by virtue of the 1956 dam construction, and the further extent, if any, of a change as a result of a usage since 1961. In the District Court's second amended findings of fact, conclusions of law, judgment and decree, the District Court made findings that: defendant had made continuous beneficial use of the water from the springs in the amount of 110 gallons per minute or 178 acre feet per year; the defendants claim no increase in the quantum of their present water right by reason of the completion of their ASC approved dam in 1958 above the 1917 water right; and the commercial fish farm created an additional beneficial use since 1961, but required no increase in their water rights.

Plaintiff contends the District Court failed to comply with our remand for further findings. However, the District Court addressed each factual determination requested in this Court's order of April 1, 1982. This Court has stated several times: "Our function on appeal in reviewing findings of fact is not to substitute our judgment for that of the District Court, but rather to determine whether there is substantial evidence to support the lower court's findings." Shanahan v. Universal Tavern Corporation (1978), 179 Mont. 36, 585 P.2d 1314, 1316. We find the District Court's findings were supported by substantial evi-

- 4 -

dence which was presented at the hearing of June 16 and 17, 1982. Plaintiff has not presented sufficient evidence found in the record which would preponderate against the District Court's findings. We, therefore, find the District Court did comply with this Court's remand for further findings.

Prior to the 1973 Water Use Act one could acquire a water right by complying with the applicable statutes at the time or by simply putting the water to a beneficial use. This was the result of this Court's holding in Murray v. Tingley (1897), 20 Mont. 260, 50 P. 723. In Bailey v. Tintinger (1912), 45 Mont. 154, 122 P. 575, this Court commented upon Murray, supra, stating:

> "In Murray v. Tingley, 20 Mont. 260, 50 Pac. 723, this court had before it the single question: Can a person make a valid appropriation of water after the statute of 1885 went into effect, without complying with the statute? After citing De Necochea v. Curtis and Wells v. Mantes, and quoting the language from the former opinion which we reproduce above, this court said: 'We think the construction of the statute by the supreme court of California is logical and correct, and are of the opinion that the Montana Act [of 1885] should be construed in the same manner.' That the conclusion reached by the California court in each of those cases, as well as the conclusion of this court in Murray v. Tingley, is correct, does not admit of argument. Section 1419, California Civil Code (Mont. Rev. Codes, sec. 4849), clearly recognizes a right which one may acquire to the use of water without complying with the statute, and that such right shall be good as against everyone except an appropriator who complies with the statute before the first claimant has actually completed his work and applied the water to a beneficial use." 45 Mont. at 168.

Plaintiff argues in the present case both parties failed to comply with section 89-810, R.C.M., 1947, thus, her right is prior to defendants' because her predecessor began using water in Ashley Creek in 1957 and defendants did not complete their dam of the Mahle Spring water until 1958. Plaintiff contends had defendants complied with the notice requirements, they would have been able to obtain a priority date of 1956 via the Relation Back Doctrine defined in section 89-812, R.C.M. 1947, the applicable statute at that time.

- 5 -

However, the District Court found defendants had made a continuous beneficial use of the Mahle Spring water since 1917. Defendants do not contend their water right increased by the construction of the dam between 1956 to 1958, but rather, they claim the dam merely stabilized defendants' water and made it available at later and drier times of the year. Thus, defendants have a priority date of 1917 which is when their predecessors first began to make a beneficial use of the spring water.

Plaintiff further contends the doctrines of equitable estoppel and laches bar defendants from asserting a superior water right. The elements necessary to establish estoppel in a water rights case were defined in Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459. However, this Court has ruled previously, estoppel arises when a party by his acts, conduct or acquiescence, has caused another in good faith to change his position for the worse. Smith v. Krutar, supra; Hustad v. Reed (1958), 133 Mont. 211, 223, 321 P.2d 1083. Here, defendants did not cause plaintiff's predecessor to change her position for the worse as defendants had already established a valid use right to the spring water. As stated above, defendants' use began in 1917 and did not increase after the construction of the dam, thus plaintiff would not have obtained a right superior to defendants' had she sought adjudication in 1957 or any time thereafter. Defendants' action to release water out of the dam was either a mere gratuity or transfer of surplus water. In either case plaintiff's predecessor could have done nothing to improve her position.

Plaintiff also claims the doctrine of laches should be applied to establish plaintiff's superior right. In Montgomery v. Bank of Dillon (1943), 114 Mont. 395, 136 P.2d 760, this Court stated: "Laches means the negligence or omission to seasonably assert a right . . . and it exists when there is an unexplained delay of such duration or such character as to render enforcement of an asserted right inequitable." 136 P.2d at 766. Plaintiff

- 6 -

claims defendants' release of the dam water constituted negligent disregard for their own property. However, there were no findings nor was there any evidence at trial which would show the release was not simply a release of surplus water. In the absence of evidence, this Court cannot apply laches in this case.

Plaintiff next argues the District Court awarded defendants an excessive appropriation of water because the award is greater than the capacity of defendants' reservoir. Plaintiff relies on Whitcomb v. Helena Water Works Co. (1969), 151 Mont. 443, 444 P.2d 301. However, Whitcomb is distinguishable from the case at hand. In Whitcomb, the city of Helena had first right to 550 miner's inches of water from Ten Mile Creek. The city's pipeline was only able to carry 225 miner's inches at the time of the original decree in 1903. After the original decree the city built a system of storage reservoirs. During the dry season the city would divert water from the tributaries to make up for loss and evaporation and to keep a certain amount of water moving through the reservoir. The city's action worked to deprive prior downstream appropriators of the full or even partial use of their decreed rights. This Court held the city could not continue to store water when it would cut off other users who had prior rights.

In the present case a different situation develops. Defendants built and maintained a reservoir to stabilize their water supply and to operate a commercial fish farm. The record shows the reservoir is filled in the spring when runoff is at its peak. This practice was praised by this Court in Federal Land Bank v. Morris (1941), 112 Mont. 445, 116 P.2d 1007; "It comes back to nothing else but that old principal that 'he who saves something that would otherwise be lost is not only to be protected in what he has saved, but commended for so doing.'" It appears that defendants use the water in the reservoir as a focal point of their irrigation system as well as for their commercial fish farm. The District Court decreed that defendants shall have

the right to use the water from the Mahle Springs at the rate of 110 gallons per minute. Plaintiff contends this rate is excessive in that it allows defendants multiple fillings of their reservoir. We disagree. The defendants have shown the prudence to catch the spring run-off to fill their reservoir. After the reservoir has been filled in the spring, defendants have a decreed right to retain the incoming spring water at the rate of 110 gallons per minute. This does not constitute a double filling of the reservoir. Any excess over 110 gallons per minute must be allowed to pass through the reservoir and onto plaintiff's property. This is the essence of the District Court's decree and we find no error in such a ruling.

Lastly, plaintiff claims traditional policy considerations do not justify the finding that defendants have applied their appropriation to a beneficial use. Plaintiff contends the fact that defendants released water to plaintiff's predecessor when requested is evidence of the fact that defendants had more water than they could beneficially use. However, the District Court made specific findings as to the uses which defendants made of the spring water: flood irrigation, sprinkler irrigation, commercial fish farm, stock water and domestic use. This Court generally allows one miner's inch to irrigate each acre of land unless "evidence discloses that a greater or lesser amount is required." Conrow v. Huffine (1914), 48 Mont. 437, 138 P. 1094. The District Court awarded defendants 110 gallons per minute to irrigate 160 acres. Even twelve miner's inches (134 gallons per minute), the amount of water for irrigating twelve acres, exceeds the amount decreed by the trial court. (One miner's inch equals 11.23 gallons per minute.) Thus, all the evidence indicates 110 gallons per minute is clearly justified.

Judgment is affirmed.

John Conway Harrison
Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____

_____
Justices