FILED

July 28 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0556

DA 14-0556

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 208

TETON COOPERATIVE RESERVOIR COMPANY,

Objector, Appellant, and Cross-Appellee,

v.

FARMERS COOPERATIVE CANAL COMPANY,

Claimant, Appellee, and Cross-Appellant.

APPEAL FROM:    Montana Water Court, Cause No. 41O-118
                Honorable Douglas Ritter, Associate Water Judge

COUNSEL OF RECORD:

For Appellant:

Holly Jo Franz, Ada C. Montague, Franz & Driscoll, PLLP; Helena, Montana

For Appellee:

Michael J.L. Cusick, Moore, O'Connell & Refling, P.C.; Bozeman, Montana

Submitted on Briefs:  June 24, 2015
                Decided:  July 28, 2015

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Teton Cooperative Reservoir Company (TCRC) appeals from the order of the Montana Water Court, adjudicating several water right claims of Farmers Cooperative Canal Company (FCCC).  FCCC cross-appeals.  We affirm.

## ISSUES

¶2     We review the following issues:

*1.  Did the Water Court apply an incorrect standard of law when it decided that FCCC's reservoirs were included in its 1895 and 1897 water rights?*

*2.   Were the Water Court's findings regarding FCCC's historical water use clearly erroneous?*

*3.  Was the Water Court's finding that FCCC's water use did not increase after the reservoirs were constructed clearly erroneous?*

*4.  Did the District Court err when it limited FCCC's diversion period in response to TCRC's objections to FCCC's claims?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     FCCC was incorporated on June 2, 1897, for the purpose of appropriating, transporting, and using for irrigation water from the Teton River.  It acquired its first water right by conveyance from one of FCCC's incorporators shortly thereafter.  After several disputes concerning this right, a district court established in *Perry v. Beattie*, Cause No. 371, Mont. Eleventh Jud. Dist. Ct., Teton Cnty., March 28, 1908, that FCCC had a right to 4,000 miner's inches with a priority date of August 1, 1897.  The court also established priority dates and flow rates for a number of other water rights from the Teton River, one of which was for 300 miner's inches with a priority date of June 15, 1895.  FCCC bought this right in 1966.

2

¶4     Initially, FCCC exercised its water right by irrigating with whatever water was available as it became available. Since FCCC did not hold the most senior rights to water from the Teton River, this left FCCC inconsistently applying fluctuating amounts of water based on the flow rate of the Teton River and the demands of more senior water users. During an average year, FCCC would be left with little or no water between early July and late Fall.

¶5     Within several years of incorporating, FCCC recognized a need to stabilize this water flow. To meet this need, it constructed two reservoirs. The first, Harvey Lake Reservoir, was completed in 1913, and the second, Farmers Reservoir, was completed in 1942. Using its reservoirs, FCCC began to store portions of the water diverted to it during the year. This allowed it to then release water as needed throughout the year, including times when diversions from the Teton River were unavailable or inadequate.

¶6     Based on its rights and these practices, FCCC filed statements of claim for its 1895 and 1897 rights. It claimed use of Harvey Lake and Farmers Reservoir as part of those rights. Its statements of claim, along with several issue remarks by the Department of Natural Resources and Conservation, appeared in the temporary preliminary decree for the Teton River, Basin 41O. These claims received a number of objections from several entities, including TCRC.

¶7     TCRC claims a water right from the Teton River junior to FCCC's 1895 and 1897 rights. TCRC constructed its own reservoir at some point following construction of the Harvey Lake Reservoir and preceding construction of the Farmers Reservoir. Objecting to FCCC's claims, TCRC argued that FCCC's reservoirs were not part of its 1895 or

1897 rights and were instead new, independent appropriations not entitled to the priority dates of either claim.

¶8 On July 30, 2014, following a hearing, the Water Court issued an order resolving the objections. In its exceptionally detailed order, it decided that FCCC has a right to 4,000 miner's inches with an 1897 priority date and a right to 300 miner's inches with an 1895 priority date. It also decided that FCCC overstated its period of diversion in its statement of claim. Rather than allowing the January 1 through December 31 period FCCC claimed, it limited FCCC to its historical period of diversion, which it found to be March 1 to November 30. It then found that the reservoirs did not change the period of diversion or the amount of water diverted by FCCC, and it decided that because the reservoirs did not expand Farmer's 1895 or 1897 rights, they did not represent new appropriations of water. Although the Water Court concluded that the reservoirs were not part of the original irrigation system, it nonetheless concluded that the reservoirs could be used as part of the 1895 and 1897 rights because they did not expand the period of diversion, volume, or flow rate of those rights.

## STANDARDS OF REVIEW

¶9 This Court reviews the Water Court's decisions using the same standards applied to District Court decisions. *Eldorado Co-Op Canal Co. v. Lower Teton Joint Objectors*, 2014 MT 272, ¶ 22, 376 Mont. 420, 337 P.3d 74. We review the Water Court's findings of fact to determine whether they are clearly erroneous. *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the

4

trial court misapprehended the effect of the evidence, or if after reviewing the entire record this Court is left with the definite and firm conviction that a mistake has been committed. *Skelton Ranch, Inc.*, ¶ 27. We review the Water Court's conclusions of law to determine whether they are correct. *Eldorado Co-Op Canal Co.*, ¶ 21.

## DISCUSSION

¶10   *1. Did the Water Court apply an incorrect standard of law when it decided that FCCC's reservoirs were included in its 1895 and 1897 water rights?*

¶11   TCRC contends that the Water Court should not have decided that FCCC's reservoirs were a part of FCCC's 1895 and 1897 water rights. It argues that a storage right cannot be added to a direct flow water right and that new storage must instead be treated as a new appropriation not entitled to the priority dates of FCCC's existing rights. TCRC claims that the reservoirs should instead have priority from the dates of their respective first use. We disagree.

¶12   Water storage, which stabilizes and conserves water supplies, is encouraged in this state. *See* § 85-2-101(3), MCA; *Bagnell v. Lemery*, 202 Mont. 238, 245, 657 P.2d 608, 611-12 (1983); *Fed. Land Bank v. Morris*, 112 Mont. 445, 454-56, 116 P.2d 1007, 1011-12 (1941). Accordingly, we have held that storage may be added to an existing direct flow water right as long as addition of storage does not interfere with the rights of other appropriators. *Whitcomb v. Helena Water Works Co.*, 151 Mont. 443, 447-48, 444 P.2d 301, 303-04 (1968); *see Bagnell*, 202 Mont. at 246, 657 P.2d at 612. We have held that storage does not interfere with other appropriators' rights as long as it does not expand the storing user's right. *Bagnell*, 202 Mont. at 244-46, 657 P.2d at 611-12. These

5

cases stand for the proposition that storage may be added to a direct flow right so long as the water user does not store water at a rate exceeding the volumetric flow rate allowed by its direct flow right or at times outside of the diversion period allowed by the direct flow right.

¶13 The Water Court applied this rule to this case. It found that FCCC's reservoirs did not expand the 1895 or 1897 rights since the amount of water it diverted and its period of diversion were the same both before and after the reservoirs were constructed. Based on this finding, the Water Court decided that the reservoirs were usable as a part of the 1895 and 1897 rights. The Water Court did not err by doing so. TCRC's argument otherwise is incorrect.

¶14 *2. Were the Water Court's findings regarding FCCC's historical water use clearly erroneous?*

¶15 The Water Court found that FCCC's 1895 and 1897 rights consisted of a right to divert 4,300 miner's inches between March 1 and November 30. TCRC claims these findings were clearly erroneous. TCRC argues that there was not substantial evidence to support the Water Court's findings regarding the amount of water historically used. This argument is based on TCRC's contention that no testimonial or documentary evidence predating the construction of either reservoir was admitted into the record before the Water Court. TCRC argues that there was, for this reason, no way for the Water Court to characterize FCCC's historical water use from that period.

¶16 We disagree. The findings were supported by substantial evidence, the effect of which the Water Court did not misapprehend. Substantial evidence is "evidence which a

reasonable mind might accept as adequate to support a conclusion, even if the evidence is weak or conflicting. It need not amount to a preponderance of the evidence, but it must be more than a scintilla." *Skelton Ranch, Inc.*, ¶ 27 (citations omitted).

¶17    While there was little direct evidence of FCCC's historical water use, the circumstantial evidence before the court combined with what direct evidence there was provided substantial evidence to support the Water Court's finding that FCCC and its predecessors in interest had actually put 4,300 miner's inches of water to beneficial use before either reservoir was constructed. The 1908 decision in *Perry v. Beattie* is the best evidence of this use. While the court in that case did not provide a detailed discussion about how it made its decision, it did find that "[FCCC] is the owner of four thousand inches of the waters of [the] Teton River, appropriated by it and its predecessors in interest of date August the 1st, 1897"; and that FCCC's predecessors in interest to the 1895 right "are the owners of three hundred inches of the waters of [the] Teton River, appropriated by them, or their predecessors in interest, of date June 15th, 1895." As appropriation required beneficial use, according to the statute controlling the action, we can reasonably infer that the court decided that FCCC and its predecessors in interest had put 4,300 miner's inches of water to beneficial use beginning in 1895 and 1897. *See* § 2, p. 131, L. 1885. Additionally, a 1914 U.S. Department of the Interior Report stated that FCCC was irrigating approximately 18,000 acres of land in 1912. It also stated that 40 miner's inches of water was sufficient to irrigate 160 acres of that land. Based on this proportion and FCCC's area of irrigation, a reasonable mind might conclude that FCCC

7

and its predecessors in interest were able to put 4,500 miner's inches[1] to beneficial use and, therefore, were likely putting their 4,300 miner's inches of water to beneficial use in 1912. Based on the foregoing evidence, there was substantial evidence to establish that FCCC and its predecessors in interest were diverting and putting 4,300 miner's inches to beneficial use prior to construction of its reservoirs.

¶18 There was also substantial evidence indicating the period of diversion prior to reservoir construction. Specifically, there was testimony from multiple witnesses that direct flow users usually began irrigating as soon as water became available, often as early as March and, depending on the crop they were growing, would usually irrigate as long as they could receive water, often into November. There was also testimony that direct flow irrigators will usually irrigate whenever water is available to them. Consistent with this testimony, several witnesses speculated that FCCC would be irrigating if it was not filling its reservoir during the beginning and end of the irrigation season. Based on this evidence, a reasonable mind might conclude that before FCCC had constructed any reservoirs and was practicing only direct flow irrigation, it, like similar irrigators, was irrigating whenever water was available to it. This suggests, as the Water Court concluded, that FCCC historically irrigated from the time when its ditches thawed through the time when they froze over. Based on records from 1963-2004 stating the dates irrigation started and stopped each year, the Water Court approximated this to be March 1 through November 30.

---

[1] This is the product of 18,000 acres and the quotient of 40 miner's inches and 160 acres of land.

¶19 TCRC argues that the evidence supporting this conclusion is outweighed by FCCC board meeting minutes. Specifically, it argues that the minutes show that prior to constructing its reservoirs, FCCC never hired a ditch rider before mid-April or employed one for more than three months. Based on this evidence, TCRC concludes that FCCC never irrigated outside of the same period.

¶20 Even if we can say that hiring a ditch rider is directly correlated with the time FCCC began diverting water, we do not agree that we should reverse the Water Court's decision based on this evidence. It is not our role in reviewing findings of fact to reweigh evidence or to second-guess the finder of fact in its decision. *Koeppen v. Bolich*, 2003 MT 313, ¶ 42, 318 Mont. 240, 79 P.3d 1100. Rather, we limit our analysis to determining whether substantial evidence exists to support the findings, whether the court misapprehended the effect of the evidence, or whether a mistake was made. *See Skelton Ranch, Inc.*, ¶ 27. Even if relevant to the Water Court's findings, the existence of the FCCC Board Minutes does not make the evidence discussed above any less substantial or supportive of the Water Court's findings. Nor are we persuaded that in light of the board minutes, the Water Court misapprehended the effect of the evidence or otherwise made a mistake.

¶21 The Water Court's findings regarding FCCC's historical water use were not clearly erroneous. They were supported by substantial evidence, the effect of which the Water Court did not misapprehend.

¶22 *3. Was the Water Court's finding that FCCC's water use did not increase after the reservoirs were constructed clearly erroneous?*

¶23 The Water Court predicated its conclusion that the reservoirs could be used as part of the 1895 and 1897 rights on its findings that FCCC's use of the reservoirs did not increase either the amount of water diverted or the period of diversion. TCRC argues that these findings were clearly erroneous. We disagree. The findings were supported by substantial evidence, the effect of which the Water Court did not misapprehend.

¶24 The parties submitted extensive records of FCCC's water use between 1963 and 2004. The Water Court also heard extensive testimony from several former ditch riders and water commissioners who worked with or for FCCC during that same period. This evidence indicated that since at least 1963, FCCC or its predecessors in interest have received their 4,300 miner's inches as it was available, either diverting all or a portion of the water to its reservoirs or to its irrigation systems. During this time, FCCC never received more than 4,300 miner's inches. Accordingly, it never stored or used more than this amount. Instead, it retained and used up to or less than—as dictated by weather conditions and senior user demands—its 4,300 miner's inches.

¶25 There is no direct evidence of FCCC's water use between 1914 and 1963, or, therefore, of FCCC's water use during every year that it has used its reservoirs. However, the amount of water FCCC used after 1963, when its reservoirs were in use, never exceeded the amount of water it used before 1914, when it did not use reservoirs. In light of this fact and in the absence of evidence to the contrary, a reasonable mind might infer that FCCC's water use did not increase after the reservoirs were constructed,

even between 1914 and 1963. For this reason, there is substantial evidence that FCCC's water use did not increase after the reservoirs were constructed.

¶26 The evidence from between 1963 and 2004 also indicated that FCCC usually began diverting water in March and usually stopped taking water in November. On occasion, it did divert as early as February. This was rare, however, and was only possible in especially warm weather. Ultimately, the Water Court limited FCCC's water right claims to FCCC's historical diversion period, ensuring that the present use of those rights was not greater than FCCC's pre or post-reservoir historical use.

¶27 For the foregoing reasons, the Water Court's findings—that neither the volume of water diverted nor the period of diversion changed after FCCC built its reservoirs—were not clearly erroneous. They were supported by substantial evidence, the effect of which the Water Court did not misapprehend.

¶28 *4. Did the District Court err when it limited FCCC's diversion period in response to TCRC's objections to FCCC's claims?*

¶29 FCCC claims on cross-appeal that the Water Court erred when it decided that FCCC's 1895 and 1897 rights were limited to a March through November period of diversion. Asserting theories of laches, waiver, and judicial estoppel, FCCC argues that TCRC was barred from objecting to its claims and that the Water Court should never have considered whether FCCC was entitled to divert water during only a portion of the year.

¶30 We disagree. Even if FCCC is correct that the Water Court should not have considered TCRC's objections, it does not follow that the Water Court erred by limiting

11

FCCC's period to March through November. The Water Court necessarily would have considered the extent of FCCC's water right and FCCC's historical use of the right regardless of whether TCRC objected.

¶31    Independent of and prior to TCRC's objections, the Department of Natural Resources and Conservation entered issue remarks into the claim files for the claims at issue in this case. Among those remarks were statements that:

> Farmers Reservoir was constructed in 1941 which does not correspond to the claimed priority date. This may indicate an expansion of the water right. . . . Harvey Lake was constructed in 1912 which does not correspond to the claimed priority date. This may indicate an expansion of the water right.

This remark raises the same issue as TCRC's objection: whether the reservoirs expanded FCCC's water rights or whether they were entitled to the 1895 and 1897 priority dates. The Water Court would have needed to resolve this remark and, therefore, this issue, regardless of whether TCRC had objected. Section 85-2-248(2), MCA. Thus, the Court would have needed to consider and to determine FCCC's historical diversion period regardless of whether TCRC made its objections.

¶32    The Water Court did not err by limiting FCCC to its historical March through November diversion period. Regardless of whether TCRC had objected, resolving the issue remarks would have required the Water Court to conduct the same analysis and to reach the same conclusion.

## CONCLUSION

¶33    The Water Court found that FCCC's reservoirs did not increase the amount of water FCCC diverted or FCCC's period of diversion. These findings were not clearly

12

erroneous. Based on these findings, the Water Court correctly concluded that FCCC's reservoirs did not expand FCCC's water rights and that the reservoirs could be included in FCCC's 1895 and 1897 rights. The Water Court would have needed to conduct this analysis regardless of whether TCRC made its objections, thus it was inconsequential to its analysis or determination of TCRC's diversion period whether TCRC was properly allowed to object. We affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE