FILED

02/13/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0092

DA 17-0092

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 20

TETON COOP CANAL CO.,

        Claimant, Appellant
        and Cross-Appellee,

    v.

TETON COOP RESERVOIR CO.,

        Appellee and Cross-Appellant,

and

LOWER TETON JOINT OBJECTORS;
FARMERS COOPERATIVE CANAL CO.,

        Objectors.

APPEAL FROM:    Montana Water Court, Cause No. 41O-132
                    Honorable Douglas Ritter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant and Cross-Appellee:

        John E. Bloomquist, Bloomquist Law Firm P.C., Helena, Montana

        For Appellee and Cross-Appellant:

        Holly Jo Franz, Ryan McLane, Franz & Driscoll, PLLP, Helena, Montana

                             Submitted on Briefs:  January 3, 2018
                                       Decided:  February 13, 2018

Filed:

                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Teton Cooperative Canal Company (Teton Canal) appeals a January 31, 2017 order of the Montana Water Court in Case 41O-132, adjudicating Teton Canal's water rights on remand from an earlier decision of this Court. Teton Cooperative Reservoir Company (Teton Reservoir) cross-appeals. We affirm.

¶2      We restate the issues on appeal as follows:

> *1.      Whether the Water Court erred by apportioning volume limits for Teton Canal's 1890 water right claims and the junior 1936 Eureka Reservoir claims;*
>
> *2.      Whether the Water Court erred by removing the Eureka Reservoir as storage under the 1890 Notice while allowing the Glendora Reservoir's storage capacity to be added to the volume limit under the 1890 Notice;*
>
> *3.      Whether the Water Court erred by permitting Teton Canal to store its 1890 direct flow water in the Eureka Reservoir during irrigation season;*
>
> *4.      Whether the Water Court erred by allowing Teton Canal a year-round period of diversion for the 1890 Notice.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      This is the second appeal filed in this case concerning the adjudication of Teton Canal's water right claims on the Teton River. *See Teton Coop. Canal Co. v. Teton Coop. Reservoir Co.*, 2015 MT 344, 382 Mont. 1, 365 P.3d 422 (hereinafter *Teton Canal I*). *Teton Canal I* was an appeal from a comprehensive order the Water Court issued on February 3, 2015, adjudicating the elements of Teton Canal's water rights in the Eureka Reservoir. We held in *Teton Canal I* that Teton Canal's claims for the Eureka Reservoir were not properly administered under its 1890 Notice of Appropriation (1890 Notice). *Teton Canal I*, ¶¶ 43, 54. We set forth in detail Teton Canal's historical background and the early development

2

of Teton Canal's water rights and the Eureka Reservoir. Those facts are not repeated. We describe here additional facts relating to volume and period of diversion relevant to the issues now on appeal.

¶4     Teton Canal's predecessors claimed 3,000 miner's inches of the Teton River for irrigation and for gathering in a reservoir. In March 1899, Teton Canal's predecessor, Montana Land and Water Company (MLWC), filed a complaint in District Court to adjudicate its water rights on the Teton River. MLWC asserted in its complaint that it owned 8,000 acres of agricultural land in Teton County. The District Court decreed a water right of 3,000 miner's inches to MLWC. *MLWC v. Farmers Coop Canal Co.*, Case No. 209 (Mont. 11th Judicial Dist., June 10, 1901).

¶5     Teton Canal's water rights were again adjudicated in *Perry v. Beattie*, Case No. 371 (Mont. 11th Judicial Dist., March 28, 1908). In the *Perry* case, Russell Shepherd, MLWC's successor, claimed water rights under the 1890 Notice and an 1891 Notice.[1] Shepherd claimed ownership of the same 8,000 acres of land identified in the *MLWC* litigation. By the time the District Court issued its decree in *Perry v. Beattie*, Shepherd had transferred ownership of the 1890 Notice to Teton Canal. The *Perry* Court decreed 3,000 miner's inches under the 1890 Notice to Teton Canal.

¶6     We held in *Teton Canal I* that the 1890 Notice was specific to the Glendora Canal and Glendora Reservoir. *Teton Canal I*, ¶ 37. The Glendora Reservoir is no longer used by Teton Canal but is owned and operated by a Teton Canal shareholder. The Water Court

---

[1]  It undisputed that the 1891 Notice claiming 10,000 miner's inches of Teton River water did not survive *Perry v. Beattie*. *Teton Canal I*, ¶ 9.

3

found that in 1892, Glendora Reservoir's surface area was approximately 47.45 acres. In 1910, the reservoir's surface area remained the same and the dam was recorded as 450 feet long and five feet high. The Water Court also found that Glendora Reservoir stored water for Teton Canal until the development of the Eureka Reservoir.

¶7     Teton Canal, jointly with the State Water Conservation Board, developed the Eureka Reservoir from 1936 to 1937. On December 3, 1936, the Board filed a declaration of intention to store, control, and divert water (1936 Declaration). The 1936 Declaration was filed for record on December 7, 1936. The Water Court found that upon the Eureka Reservoir's completion in 1937, Teton Canal moved its water storage from Glendora Reservoir to Eureka Reservoir. The Eureka Reservoir originally had a storage capacity of 4,000 acre feet. In 1947, the dam was expanded to increase the Eureka Reservoir's storage capacity by 750 acre feet. In 1957, the dam's storage capacity was expanded again by 750 acre feet. The present capacity is 5,500 acre feet. Accordingly, development of the Eureka Reservoir allowed Teton Canal to store more water.

¶8     The Water Court found no credible evidence showing that any water was stored at the Eureka site before the Reservoir was developed in 1937. Teton Canal's shareholder minutes do indicate, however, that off-season diversion occurred in 1923, 1924, and 1933, well before Eureka Reservoir was added to the system. The Water Court found no evidence to determine the nature or extent of Teton Canal's off-season diversion prior to 1963. A Water Commissioner began recording the period of Teton Canal's water diversions in 1963. The Water Court found that the post-1963 Water Commissioner records offered

4

significant information supporting a year-round period of diversion, as well as evidence of historical use.

¶9     There likewise is no record of annual volumes prior to 1963. Teton Canal's expert, John Westenberg, testified that the Water Commissioner's records supported 12,000 acre feet for Teton Canal's irrigation water right claims and 14,000 acre feet for all of Teton Canal's water right claims. On September 28, 2012, Teton Canal and Lower Teton Joint Objectors entered a stipulation (Stipulation) for the purpose of resolving Lower Teton Joint Objectors' objections, "avoid[ing] unnecessary litigation[,] and to describe the historic use of [Teton Canal's] water right claims."[2] The Stipulation called for an additional 2,000 acre feet as a high-water irrigation claim available in high water years.[3] Further, Teton Canal limited its irrigation water right claims to 7,650 acres within its claimed overall 17,322-acre place of use. Based in part on the Stipulation, the Water Court held in its February 3, 2015 Order that Teton Canal's six claims comprised a total volume of 14,000 acre feet.

¶10    In *Teton Canal I*, we held that: (1) the 1890 Notice was specific to the Glendora Canal and Glendora Reservoir; (2) Teton Canal could not claim the Eureka Reservoir under the 1890 Notice; and (3) the Eureka Reservoir could not relate back to the 1921 Notice because Teton Canal and its predecessors failed to proceed with reasonable diligence in developing the Eureka Reservoir. We remanded to the Water Court to assign a priority

---

[2] Teton Canal does not challenge the validity of the Stipulation.
[3] The Water Court assigned 1,000 acre feet each to the December 31, 1947 priority date and the December 31, 1957 priority date reflecting the dam expansions. Teton Canal does not appeal these 2,000 acre feet priority assignments. In the Stipulation, the 2,000 acre-feet claim is described as "an additional high-water irrigation claim."

date to Teton Canal's Eureka Reservoir water right claims and "for further proceedings consistent with [the] Opinion." *Teton Canal I*, ¶ 57.

¶11 On remand, the Water Court assigned a priority date of December 7, 1936, to Teton Canal's Eureka Reservoir water right claims. The Water Court determined that it was necessary to address the elements of volume and period of diversion for Teton Canal's water right claims under the 1890 Notice and under the 1936 Declaration. Based on the Stipulation and the evidence submitted during the previous two-day hearing, the Water Court assigned 8,095 acre feet under the 1890 Notice—8,000 acre feet of direct flow and 95 acre feet of storage—and assigned a December 7, 1936 priority date to 3,905 acre feet of storage in the Eureka Reservoir. Lastly, the Water Court held that all of Teton Canal's water right claims have a year-round period of diversion. Teton Canal timely appealed.

**STANDARD OF REVIEW**

¶12 This Court reviews the Water Court's decisions using the same standards applied to district court decisions. *Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co.*, 2015 MT 208, ¶ 9, 380 Mont. 146, 354 P.3d 579 (*Farmers*). Whether a district court complied with remand instructions is a question of law, which we review for correctness. *Brown & Brown of MT, Inc. v. Raty*, 2013 MT 338, ¶ 8, 372 Mont. 463, 313 P.3d 179.

¶13 We review the Water Court's findings of fact to determine if they are clearly erroneous. *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if after reviewing the entire record this Court is left with the definite and firm

conviction that a mistake was committed. *Skelton Ranch, Inc.*, ¶ 27. We review the Water Court's conclusions of law to determine if they are correct. *Skelton Ranch, Inc.*, ¶ 26.

**DISCUSSION**

¶14   *1. Whether the Water Court erred by apportioning volume limits for Teton Canal's 1890 water right claims and the junior 1936 Eureka Reservoir claims.*

¶15   Teton Canal argues that the Water Court improperly expanded upon the scope of remand by assigning volumes. Further, Teton Canal maintains that if the Water Court did not err in assigning volumes, the volume amounts are not supported by the evidence and therefore are clearly erroneous. Teton Canal finally contends that the Water Court's volume limitation is contrary to Montana law because it impermissibly diminished Teton Canal's water rights.

¶16   Teton Reservoir argues that the Water Court correctly addressed the remand instructions to properly administer each water right required by statute. Teton Reservoir contends that the Water Court's volume limits are supported by substantial evidence. Teton Reservoir maintains that the Water Court's volume limitation on Teton Canal's water rights is not contrary to Montana law and is a product of Teton Canal's own quantification in the Stipulation.

¶17   We first conclude that the December 7, 1936 priority date for the Eureka Reservoir is supported by substantial evidence. In *Teton Canal I*, we required the Water Court to assign a new priority date to the Eureka Reservoir. *Teton Canal I*, ¶ 57. The Water Court assigned a December 7, 1936 priority date to Teton Canal's water rights for the Eureka Reservoir because the Water Conservation Board filed the 1936 Declaration on that date.

7

The governing statute states that the water right "shall vest in such board on the date of the filing of such declaration." Section 89-121, RCM (1947) (repealed 1973). Teton Canal does not challenge the December 7, 1936 priority date; Teton Canal argues that the Water Court exceeded its scope on remand by addressing elements of Teton Canal's water right claims other than the priority. The Water Court determined from this Court's holding on priority of the Eureka Reservoir that it was essential to resolve other elements of Teton Canal's water rights.

¶18 Montana's Water Use Act requires, for each person found to have an existing water right under the laws of the State of Montana, a final decree that states specific elements, including among others: (1) the amount of water included in the right, either by flow rate for direct flow rights, such as irrigation rights, or by volume for other rights, such as "reservoir storage rights," § 85-2-234(6)(b)(i)-(ii), MCA[4]; (2) the date of priority of the right, § 85-2-234(6)(c), MCA; and (3) the inclusive dates during which the water is used each year, § 85-2-234(6)(h), MCA. The statute clearly requires a Water Court to assign a specific priority date, amount of water, and period of diversion in each water right's final decree. Because the administration of a water right must include elements that are specific to that water right, it follows that when the priority date of a water right is disturbed on appeal, the Water Court has discretion to consider whether other elements of the right are affected.

---

[4] The Act gives the Water Court discretion to declare both flow rate and volume if the water judge determines that both are needed "to adequately administer the right." Section 85-2-234(6)(b)(iii), MCA.

8

¶19 The Water Court's February 3, 2015 Order assigned a single priority date and a combined volume of 12,000 acre feet for all of Teton Canal's irrigation water right claims, including the Eureka Reservoir, under the 1890 Notice. Following our decision in *Teton Canal I*, the Water Court created separate implied claims for Teton Canal's water rights in the Eureka Reservoir and assigned those claims a 1936 priority date, separating the reservoir rights from those administered under the 1890 Notice. Consequently, the Water Court's combined volume had to be revisited to properly administer Teton Canal's water right claims, so that each water right identified the amount of water decreed. Once we reversed the priority date for Teton Canal's water rights for the Eureka Reservoir, the Water Court acted within its discretion on remand to revisit other required elements to ensure proper administration of Teton Canal's water rights. Therefore, we conclude that the Water Court did not impermissibly exceed its scope upon remand.

¶20 We turn to whether the Water Court erred in determining the assigned volumes. First, Teton Canal argues that the Water Court's volume assignments of 8,000 acre feet for direct flow under the 1890 Notice and 4,000 acre feet under the 1936 Declaration are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Skelton Ranch, Inc.*, ¶ 27. Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion, even if the evidence is weak or conflicting. It need not amount to a preponderance of the evidence, but it must be more than a scintilla." *Skelton Ranch, Inc.*, ¶ 27 (internal citations omitted).

¶21 Although there was little direct evidence of Teton Canal's historical water use before and after development of the Eureka Reservoir, the circumstantial evidence before

9

the court, combined with the available direct evidence, provided substantial evidence to support the Water Court's finding that Teton Canal's direct flow claim should be limited to 8,000 acre feet. In both prior adjudications of Teton Canal's direct flow claim—*MLWC* and *Perry v. Beattie*—the district courts decreed 3,000 miner's inches under the 1890 Notice. Neither court decreed a volume limit under the 1890 Notice. Further, there is no evidence of Teton Canal's exact volume consumption until 1963. The Water Court's February 3, 2015 Order declared a 14,000 acre-foot volume based both on the post-1963 evidence of historical use and on Teton Canal's Stipulation that its total volume would not exceed 14,000 acre feet, including 2,000 acre feet for its later-acquired "high-water" right.

¶22 Substantial evidence supports the Water Court's decision to limit Teton Canal to a volume amount of 12,000 acre feet for any combination of Teton Canal's water right claims, excluding those related to the 1947 and 1957 dam expansions. The Stipulation states that Teton Canal "agrees that the claim abstract for the irrigation claims consolidated in this case shall include a volume limit of not more than a cumulative amount of 12,000 acre feet per year for any combination of [Teton Canal]'s irrigation claims with a priority date of not earlier than April 18, 1890." "Teton Canal's irrigation claims" include Teton Canal's direct flow and the original storage capacity of the Eureka Reservoir. Testimony from Teton Canal's expert, Westenberg, acknowledged that the stipulated 12,000 acre-foot volume limit was supported by the evidence. Additionally, the evidence indicates that the Eureka Reservoir had a storage capacity of 4,000 acre feet in 1937. Based on Teton Canal's stipulation to a 12,000 acre-foot volume limit, the Water Court reduced the stipulated total for the 1890 priority date by 4,000 acre feet which reflects the original storage capacity of

the Eureka Reservoir. The Water Court properly relied on the terms of the Stipulation, along with the available evidence, to make its volume determination.

¶23 Based on the Stipulation and the Eureka Reservoir's storage capacity, a reasonable mind might accept that prior to development of the Eureka Reservoir, Teton Canal and its predecessors were likely using 8,000 acre feet of direct flow for irrigation. From our review of the record, we conclude that there was substantial evidence to support the Water Court's assignment of 8,000 acre feet to direct flow under the 1890 Notice and 4,000 acre feet to the 1936 Declaration.

¶24 Teton Canal argues that the Water Court's volume limitation impermissibly constrains Teton Canal's 1890 Notice water right in violation of the principles set forth in *McDonald v. State*, 220 Mont. 519, 722 P.2d 598 (1986). *McDonald* held that the Water Court's decree must "state the amount of water, rate and volume included in the right; but that the amount, rate and volume must at all time be subject to the requirement of beneficial use." *McDonald*, 220 Mont. at 532, 722 P.2d at 606. We have made clear that *McDonald* does not foreclose a volume determination for an existing water right. *In re Eldorado Coop. Canal Co.*, 2016 MT 94, ¶ 34, 383 Mont. 205, 369 P.3d 1034. We acknowledged in *McDonald* the "rare case" in which beneficial use under a pre-1973 right may require an amount greater than the acre feet fixed in the decree, if "such beneficial use was within the pre-1973 flow-rate appropriation as to the pattern of use and means of use." *McDonald*, 220 Mont. at 532, 722 P.2d at 606. Here, the Water Court's adjudication of volume was based on both acknowledged and evidence-based historic use. Its decision does not violate

11

*McDonald* because it "do[es] not improperly constrain the historical beneficial use of pre-July 1, 1973 water rights." *Eldorado*, ¶ 24.

¶25     Teton Canal stipulated to a quantified volume of 12,000 acre feet for its irrigation water right claims. Teton Canal's expert, Westenberg, testified that this quantified amount is supported by the evidence. Teton Canal has not shown that the quantified volume determination, based on Teton Canal's own stipulation and agreed to by its expert, is contrary to its historic beneficial use. Thus, the Water Court was within its discretion to limit Teton Canal's water right claims, and it properly quantified the amount of water for each water right to comply with § 85-2-234(6)(b), MCA. We conclude that the Water Court's volume assignment is supported by substantial evidence and necessary to properly administer each water right in accordance with Montana law. Therefore, the Water Court did not err in quantifying Teton Canal's water right claims based on volume.

¶26     *2. Whether the Water Court erred by removing the Eureka Reservoir as storage under the 1890 Notice while allowing the Glendora Reservoir's storage capacity to be added to the volume limit under the 1890 Notice.*

¶27     Teton Canal argues that removal of the Eureka Reservoir as storage under the 1890 Notice is contrary to Montana law. Teton Reservoir contends that the law of the case controls and that our decision in *Teton Canal I* clearly establishes that the Eureka Reservoir cannot remain as storage under the 1890 Notice.

¶28     Teton Canal's argument rejoins those this Court rejected in *Teton Canal I* by claiming that the Eureka Reservoir may remain as storage under the 1890 Notice. Teton Canal bases its argument on this Court's decision in *Farmers*. We recognized in *Farmers* that Farmers could divert and store water under its 1895 and 1897 decreed direct flow water

right to two reservoirs—Harvey Lake and Farmers Reservoir. *Farmers*, ¶ 13. Harvey Lake was completed in 1913, and Farmers Reservoir was completed in 1942. *Farmers*, ¶ 5. We allowed the two reservoirs to relate back to the previous decreed water rights because storage may be added to a direct flow water right so long as the water is not stored at a rate exceeding the volumetric flow rate allowed by its direct flow right or at times outside the diversion period allowed by the direct flow right. *Farmers*, ¶ 12. There was no evidence that the additions of the reservoirs expanded Farmers' 1895 or 1897 decreed water rights. *Farmers*, ¶ 13. Neither of the reservoirs was considered a new appropriation.

¶29 This Court also has determined, however, that storage may not be added to a direct flow water right if the stored water reflects a separate right with its own priority date. *BLM v. Barthelemess*, 2016 MT 348, ¶ 38, 386 Mont. 121, 386 P.3d 952. In *Teton Canal I*, we expressly rejected that the Eureka Reservoir could relate back to the 1890 Notice, and thus decided it was a new appropriation and must be administered under a different priority date. *Teton Canal I*, ¶ 43. We also determined that Teton Canal's "filing of the 1921 Notice and the Water Conservation Board's filing of the 1936 Declaration . . . demonstrate that Teton Canal understood that new water right claims were needed for the Eureka Reservoir's development." *Teton Canal I*, ¶ 41. In keeping with this holding, the Water Court created implied water right claims for the Eureka Reservoir and assigned a 1936 priority date. The Water Court did not err in ruling that the Eureka Reservoir's water right claims are separate rights with a priority date junior to the 1890 Notice direct flow rights.

¶30 Teton Reservoir cross-appeals the Water Court's determination that an additional 95 acre feet associated with Glendora Reservoir should be assigned to the 1890 Notice.

13

Teton Reservoir argues that the additional 95 acre feet is not supported by the evidence. Teton Canal counters that it was within Teton Canal's right to move storage from the Glendora Reservoir to the Eureka Reservoir without disrupting Glendora Reservoir's priority date under the 1890 Notice.

¶31     In *Teton Canal I*, we concluded that the 1890 Notice secured Teton Canal's rights in the Glendora Canal and Glendora Reservoir. *Teton Canal I*, ¶¶ 30, 37. Therefore, the Glendora Reservoir's storage capacity can be attributed to the volume amount under the 1890 Notice. The Water Court calculated the storage capacity of the Glendora Reservoir based on the information known in 1910. In 1910, Glendora Reservoir's surface area was approximately 47.45 acres and the dam was recorded as 450 feet long and 5 feet high. The Water Court used this evidence and the Montana Department of Natural Resources and Conservation's formula for estimating a reservoir's capacity to calculate the Glendora Reservoir's capacity.[5] The Water Court calculated Glendora Reservoir's storage capacity as 95 acre feet. The Water Court therefore concluded that an additional 95 acre feet of storage relates back to the 1890 Notice and added it to the 8,000 acre-feet direct flow volume limit.

¶32     Teton Canal could move Glendora Reservoir's storage capacity to the Eureka Reservoir without disrupting the Glendora Reservoir's appropriation under the 1890 Notice. Any changes to Teton Canal's water rights between 1890 and July 1, 1973, were governed by § 89-803, RCM (1947) (repealed 1973). That section provided that a water

---

[5] The record reflects that the DNRC's formula for estimating the capacity of a reservoir is "Surface Area x Depth of Water x 0.4 = Capacity in Acre Feet."

14

appropriator could change the use, place of diversion, purpose, or place of storage so long as others were not thereby injured. In *Hansen v. Larsen*, this Court held that water users who changed their use of water were not required to prove the lack of injury to other water users. *Hansen*, 44 Mont. 350, 353, 120 P. 229, 231 (1911). Rather, the party objecting to the change had the burden of demonstrating adverse impact to its water rights. *Hansen*, 44 Mont. at 353, 120 P. at 231; s*ee also Tucker v. Missoula Light & Water Co.*, 77 Mont. 91, 99, 250 P. 11, 14 (1926); *In re Royston*, 249 Mont, 425, 428, 816 P.2d 1054, 1057 (1991) (noting that the Water Use Act "re-assigned this burden").

¶33     Teton Canal's transfer of storage water from the Glendora Reservoir to the Eureka Reservoir is governed by § 89-803, RCM. Therefore, Teton Canal was within its right to change the place of storage, but in doing so could not increase the burden on other water users. Although the Eureka Reservoir cannot be considered storage under the 1890 Notice, the law did not prevent Teton Canal from moving its place of storage from the Glendora Reservoir to the Eureka Reservoir. Accordingly, the Water Court did not err in appropriating the Glendora Reservoir storage capacity under the 1890 Notice and assigning the total volume limit for the 1890 Notice as 8,095 acre feet. For the foregoing reasons, we conclude that the Water Court's findings were not clearly erroneous.

¶34     *3. Whether the Water Court erred by permitting Teton Canal to store its 1890 direct flow water in the Eureka Reservoir during irrigation season.*

¶35     Teton Reservoir argues that the Water Court erred by allowing Teton Canal to temporarily store water during irrigation season in the Eureka Reservoir to be used during that same irrigation season. Teton Reservoir specifically argues that temporary storage of

15

direct flow cannot be considered beneficial use. Teton Canal counters that the Water Court's finding is correct because it limits the use to that irrigation season and did not increase the flow rate volume under the 1890 Notice.

¶36 The Water Court's Finding of Fact No. 4 states in part:

> Teton Canal can claim a combination of direct flow and stored water under the 1890 priority date so long as that volume is based on development contemplated and perfected under the 1890 Notice. In this context, stored water refers to water diverted for storage outside the irrigation season as opposed to water diverted and temporarily stored for later use during the same irrigation season.

The court thus allowed Teton Canal to temporarily store water diverted during irrigation season under the 8,000 acre feet of direct flow right in the Eureka Reservoir as long as it is used during that same irrigation season. The Water Court's language does not allow Teton Canal to add storage to the direct flow. Instead, the Water Court distinguished between storage and direct flow claims under the 1890 Notice.

¶37 Water storage that stabilizes and conserves water supplies is encouraged in this State. *See* § 85-2-101(3), MCA. An owner of a priority for direct flow irrigation is entitled to use his discretion as to whether he shall store water in reservoirs for future use or use it immediately; however, the rule is dependent upon the lack of interference with other rights. *Whitcomb v. Helena Water Works Co.*, 151 Mont. 443, 449, 444 P.2d 301, 304 (1968). We have since determined that Montana law allows a direct flow water user to add storage as long as the flow and volume of water used do not increase and the period of diversion is not expanded. *Farmers*, ¶ 12.

16

¶38 Here, Teton Canal is entitled to store water under its 1890 Notice direct flow right in a reservoir for future use so long as it does not increase flow and volume and the period of diversion is not expanded. As we determined above, the Eureka Reservoir is a separate appropriation and its capacity could not be added to the 1890 Notice; Teton Canal was entitled, however, to store its direct flow right in a reservoir for application to a beneficial use. The record supports that Teton Canal stored portions of its direct flow in April and May—early irrigation season—to be used in August and October—late irrigation season— once Teton Canal's diversions were shut down in June or July. The record further supports that Teton Canal already was storing portions of its direct flow prior to the development of the Eureka Reservoir. Allowing Teton Canal to store portions of its direct flow right in the Eureka Reservoir for use later in the irrigation season does not infer with other rights because Teton Canal is still limited to 8,000 acre feet of direct flow under the 1890 Notice. The Water Court's determination that water diverted under the 1890 Notice as direct flow may be temporarily stored in the Eureka Reservoir for use during that same irrigation season is not contrary to Montana law. We conclude that the Water Court's Finding of Fact No. 4 is not clearly erroneous.

¶39 *4. Whether the Water Court erred by allowing Teton Canal a year-round period of diversion for the 1890 Notice.*

¶40 Teton Reservoir argues that the Water Court incorrectly determined that Teton Canal's 1890 Notice had a year-round period of diversion.[6] Teton Canal counters that

---

[6] The Water Court decreed a year-round period of diversion for all of Teton Canal's claims. Teton Reservoir contests the year-round period of diversion only for rights declared under the 1890 Notice.

year-round diversion for the 1890 Notice is supported by substantial evidence. We agree with Teton Canal.

¶41 The Glendora Reservoir was determined to be a storage water right under the 1890 Notice. There is ample evidence to support year-round diversion prior to development of the Eureka Reservoir, as well as after. Specifically, Teton Canal's shareholder meetings indicate that off-season diversion occurred in 1923, 1924, and 1933, which correspond with Teton Canal's use of the Glendora Reservoir. Because the 1890 Notice is a combination of direct flow and storage, the Water Court noted that the 1890 Notice "includes 8,000.00 acre feet of direct flow water that is diverted between April 20 and October 14 and 95.00 acre feet of water that is diverted between January 1 and December 31." Thus, only the diversion attributed to the former Glendora Reservoir is year-round, which is supported by evidence from Teton Canal's shareholder meetings. Accordingly, the Water Court's determination that Teton Canal's 1890 Notice should have a year-round period of diversion is supported by the evidence. Therefore, the Water Court's conclusion is not clearly erroneous.

## CONCLUSION

¶42 The Water Court properly determined on remand that volume assignments were necessary to administer Teton Canal's 1936 water right claims. We affirm the Water Court's conclusion assigning 8,095 acre feet—8,000 acre feet of direct flow and 95 acre feet of storage—under Teton Canal's 1890 Notice and 3,905 acre feet of storage under Teton Canal's 1936 Declaration. We also affirm the Water Court's removal of the Eureka Reservoir as storage under the 1890 Notice. The Water Court did not err in determining

18

that Teton Canal may divert water for storage during an irrigation season as part of its 8,000 acre-feet direct flow volume or in granting Teton Canal a year-round period of diversion for Teton Canal's 1890 Notice claims.

¶43 Affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE